### In re HINDU TEMPLE AND COMMUNITY CENTER OF GEORGIA, INC., Debtor.

**Lloyd Whitaker, Trustee, Movant,**

v.

**Annamalai Annamalai, Respondent.**

No. 09–82915.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Aug. 30, 2013.

Thomas Wayne Dworschak, Office of the U.S. Trustee, Atlanta, GA, for U.S. Trustee.

*ORDER GRANTING MOTION TO HOLD ANNAMALAI ANNAMALAI IN CONTEMPT FOR VIOLATION OF THE BARTON DOCTRINE*

JAMES E. MASSEY, Bankruptcy Judge.

On August 9, 2013, Lloyd T. Whitaker, the Chapter 11 Trustee in this case, filed a motion to hold Annamalai Annamalai in contempt and to impose other sanctions, Doc. No. 414 (the "Contempt Motion") for an alleged willful violation of the Barton doctrine by Mr. Annamalai for filing on July 29, 2013 a complaint in the U.S. District Court for the Southern District of Ohio in Case No. 2:13CV00747 (the "Ohio Federal Action") against a professional employed by the Trustee in this case and against wives of the Trustee and two professionals representing the Trustee.[1]

---

1. The Barton doctrine is well-settled law that provides that an entity cannot sue a bankrupt-

The sanctions sought by the Trustee against Mr. Annamalai include injunctive relief in the form of ordering Mr. Annamalai to dismiss with prejudice the Ohio Federal Action against the wives of the Trustee and his professionals and against the attorney employed by the Trustee, a monetary sanction for contempt measured at the rate of $1,000 per day from the date of the filing of the Ohio Federal Action to the date it is dismissed with prejudice, and an award of attorney's fees.

The Trustee filed a separate motion for an expedited hearing on the Contempt Motion, which the Court granted in an order and notice entered on August 9, 2013. That order scheduled a hearing on the Contempt Motion for August 20, 2013. The Trustee filed a separate certificate of service of the Contempt Motion describing service on Mr. Annamalai in a manner permitted by Bankruptcy Rule 7004. A certificate of service of the order and notice of the August 20 hearing filed August 11, 2013 shows service of that order and notice on Mr. Annamalai by mail on that date.

Prior to filing the Contempt Motion, the Trustee filed two other motions seeking approval of compromises and scheduled the hearings on those motions for August 20, 2013.

On August 15, 2013, Mr. Annamalai filed in Adversary Proceeding No. 09–9080, which proceeding is a part of this Chapter 11 case, a motion for a stay of hearings to be held on August 20, 2013. In the first paragraph of his motion for a stay, Mr. Annamalai acknowledged that the hearing on the Contempt Motion and two other motions was to be held on August 20. Emergency Motion for Stay Pending Appeal, Doc. No. 467 in A.P. No. 09–9080, p. 1. He was thus aware of the scheduling of the August 20 hearing on the Contempt Motion. The Court denied his motion for a stay.

Mr. Annamalai filed a response to the Contempt Motion on August 19, 2013 in which he contends that the Barton doctrine is inapplicable to the Ohio Federal Action.

The Court held a hearing on the Contempt Motion on August 20, 2013. Mr. Annamalai did not appear at that hearing. At the hearing, the Court heard testimony of Lloyd T. Whitaker, the Chapter 11 Trustee, and his attorney, Hayden Kepner, whose statements were made in his place as an attorney and officer of the Court.

### A. Prior Proceedings.[2]

The Hindu Temple and Community Center of Georgia, Inc. (the "Debtor") filed on August 31, 2009 a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code under Case No. 09–82915. Respondent Mr. Annamalai Annamalai as the "Chairman" of the Debtor signed an application to employ its counsel. That attorney withdrew in the spring of 2010, and the Debtor remains unrepresented.

cy trustee or his professionals for actions committed in connection with their duties in the bankruptcy case without first obtaining leave of the bankruptcy court that appointed the trustee. See, e.g., Carter v. Rodgers, 220 F.3d 1249 (11th Cir.2000).

The Contempt Motion also asserted that Mr. Annamalai is attempting to exercise control over property of the Debtor's estate in violation of section 362(a)(3) of the Bankruptcy Code. 11 U.S.C. § 362(c) (prohibiting "any act ... to exercise control over property of the estate"). In view of the Court's ruling, it is not necessary to consider this contention.

2. The proceedings discussed are only a portion of the extensive litigation conducted in this case in which Mr. Annamalai has steadfastly resisted and opposed, without any legal basis, the efforts of the Trustee to perform his statutory duties, all the while making groundless accusations of misconduct by the Trustee.

On the oral motion of the United States Trustee at a hearing on November 2, 2009, the Court ordered the appointment of a trustee in this case. The United States Trustee appointed Lloyd T. Whitaker as the Chapter 11 Trustee on November 4, 2009, and Mr. Whitaker has served continuously in that capacity since that date. With court approval, Mr. Whitaker employed as his primary counsel the firm of Scroggins and Williamson, P.C. in which Hayden Kepner is a member. Mr. Kepner has served as the lead attorney for the Trustee in this case.

On November 9, 2009, the Trustee filed a complaint commencing Adversary Proceeding No. 09–9080 against Mr. Annamalai, a number of individuals associated with him, and one corporate entity controlled by Mr. Annamalai. The complaint was subsequently amended to drop certain defendants and to add new defendants, including several other corporate entities controlled by Mr. Annamalai, one of which is Paru Selvam, LLC. The complaint as amended contained several counts against various defendants, including counts for avoidance and recovery of fraudulent transfers made by the Debtor to Mr. Annamalai and a count based on the alter ego doctrine. In the alter ego count, the Trustee alleged that Mr. Annamalai was the alter ego of the Debtor and that two other corporate defendants, including Paru Selvam, LLC, were his alter egos, making all of them liable for the debts of the Debtor. After more than two years of litigation, the Court conducted a trial in the Adversary Proceeding in July 2012.

A few weeks later, in late August of 2012, Mr. Annamalai and others filed a complaint in the United States District Court for the Northern District of Georgia in Civil Action File No. 1:12–CV–2941 (the "Georgia Federal Action") against approximately twenty-five individuals, including the Trustee, the Trustee's financial advisor, an auctioneer employed by the Trustee and Mr. Kepner. The complaint alleges that the defendants were part of a criminal conspiracy to deny Mr. Annamalai rights under the U.S. Constitution in violation of state and federal RICO statutes. The bulk of the allegations against the Trustee and his professionals involved acts authorized by orders of this Court that were final and not subject to appeal, such as an order lifting the automatic stay to permit a secured lender to foreclose on real property owned by the Debtor.

Also in August of 2012, Mr. Annamalai filed in the Common Pleas Court of Montgomery County, Ohio, Civil Division, in Case No. 2012 CV 02619 (the "Ohio State Court Action") an amended complaint, entitled "Plaintiff Annamalai Annamalai's Amended Complaint," adding as defendants Mr. Kepner and Robert Williamson, also a member of Scroggins and Williamson, P.C. In this action Mr. Annamalai sought judgments against Messrs. Kepner and Williamson on the theory that they, along with other defendants, had defamed Mr. Annamalai, had engaged in fraudulent conduct and were part of a civil conspiracy to injure Mr. Annamalai.

On September 6, 2012, the Trustee filed an emergency motion in this Chapter 11 case asking the Court to hold Mr. Annamalai and others in contempt and to impose sanctions on those respondents for violating the Barton doctrine by filing the complaints in the Georgia Federal Action and the Ohio State Court Action. On September 12, 2012, this Court entered an order grating that motion for contempt, holding that the filing of those complaints against the Trustee, Mr. Kepner and the Trustee's other court-approved professionals violated the Barton doctrine and directing Mr. Annamalai and other plaintiffs to dismiss

those complaints against the Trustee, Mr. Kepner, and the Trustee's other professionals. The Court reserved a ruling on sanctions. Mr. Annamalai partially complied with the Court's order by dismissing or attempting to dismiss those complaints as to the Trustee and his professionals.

Later in September 2012, this Court entered in the Adversary Proceeding a partial judgment against Mr. Annamalai and other defendants with respect to certain counts of the amended complaint and submitted proposed findings of fact and conclusions of law to the United States District Court for the Northern District of Georgia as to other counts, including the fraudulent transfer counts against Mr. Annamalai and the alter ego count against Paru Selvam, LLC.

In an order entered on January 22, 1013 in Civil Action File No. 1:12–CV–4310, the District Court adopted this Court's proposed findings of fact and conclusions of law in the Adversary Proceeding and entered a judgment against Mr. Annamalai and Paru Selvam LLC, among others, for money damages. That judgment is final and not subject to appeal.

On February 19, 2013, the District Court affirmed this Court's partial judgment against Mr. Annamalai entered in the Adversary Proceeding. His appeal of the District Court's judgment to the United States Court of Appeals for the Eleventh Circuit remains pending.

## B. Findings of Fact.

Mr. Whitaker testified at the August 20 hearing as did Mr. Kepner in his place as an officer of the Court. Based on that testimony and the prior proceedings discussed above, the Court makes the following findings of fact.

## 1. Events Leading to the Filing of a Complaint by Mr. Annamalai in Ohio against an Attorney for the Trustee and against the Wives of that Attorney, the Trustee and Hayden Kepner.

In November 2012, the Trustee obtained court approval to employ Ron Kozar, an Ohio attorney, to represent the Trustee in collection efforts on the judgments obtained in the Adversary Proceeding. In his effort to find assets to satisfy his judgments against Mr. Annamalai, Paru Selvam, LLC and other defendants in the Adversary Proceeding, the Trustee learned that Paru Selvam, LLC, which owned an office building located in downtown Dayton, Ohio (the "Building"), appeared to have transferred the Building during the pendency of the Adversary Proceeding to another entity associated with Mr. Annamalai for no consideration. That initial transferee apparently thereafter transferred the Building for no consideration to a Texas entity known as Ashok Spiritual Healing Center ("Ashok"). Mr. Annamalai alleged in the Complaint that the Building is "owned by the family members of the plaintiff." Complaint, ¶ 45, p. 17.

After learning that Ashok was planning to sell the Building for approximately $500,000, the Trustee filed on July 8, 2013 a complaint in the Court of Common Pleas in Montgomery County, Ohio (Case No. 2013 CV 4016) against Paru Selvam, LLC, Ashok and the initial transferee, seeking to enjoin Ashok from selling the Building and to set aside the alleged fraudulent transfer of the Building by Paru Selvam (the "Building Litigation").

On July 19, 2013, the Ohio state court issued a preliminary injunction enjoining Ashok from selling the Building. A copy of the preliminary injunction was attached to the Contempt Motion and introduced

into evidence at the August 20 hearing as Exhibit A. If the transfers of the Building by Paru Selvam, LLC and its immediate transferee were without adequate consideration or were made with intent to hinder, delay or defraud the Trustee in his capacity as a creditor of Paru Selvam, LLC, the Trustee would likely prevail in that litigation, resulting in a substantial recovery for the benefit of the Debtor's bankruptcy estate.

Ten days later, on July 29, 2013, Mr. Annamalai, acting pro se, filed a 90–page complaint to commence the Ohio Federal Action in the United States District Court for the Southern District of Ohio (hereafter the "Complaint"). A copy of the Complaint is attached to the Contempt Motion as Exhibit B and was introduced into evidence at the August 20 hearing as Exhibit B. Motion to Hold Annamalai in Contempt and to Impose Other Sanctions for Willful Violations of the Barton Doctrine, Doc. No. 414, Part 3. The Complaint names as defendants twenty-seven individuals and entities, including Mr. Kozar and the wives of Kozar, Kepner and the Trustee (collectively the "Spouse Defendants"), and seeks $125 million in compensatory and punitive damages in connection with an alleged conspiracy to defame and destroy Annamalai and a temple he had formed in Ohio.

Mr. Annamalai neither sought nor obtained leave from this Court to file the Ohio Federal Action.

### 2. The Allegations in the Ohio Federal Action.

The general thrust of the Complaint is that numerous persons and entities conspired to defame and destroy Annamalai and his Ohio temple by posting derogatory comments about him on various blogs and by making defamatory comments against him in Ohio. The Complaint contains ten counts, two of which are designated as Count II. The first one of those is directed to defendants other than Mr. Kozar and the Spouse Defendants.

The allegedly defamatory and slanderous statements are set out in two portions of the Complaint. The first portion begins at paragraph 101 on page 38 of the Complaint and continues for 16 pages, ending with paragraph 108. Paragraphs 101, 102 and 103 quote from purported transcripts of statements concerning Mr. Annamalai allegedly made by certain individuals (1) to a reporter, (2) on a video published on youtube.com taken from the "Dayton Informer's News Web Portal," and (3) at a meeting of the Dayton Board of Commissioners. Neither Mr. Kozar nor any of the Spouse Defendants is mentioned by name in paragraphs 101–108, and none of them is otherwise identified as a person who made any particular defamatory statement about Mr. Annamalai in those paragraphs or anywhere else in the Complaint.

Mr. Annamalai's amended complaint in the Ohio State Court Action against Messrs. Kepner and Williamson filed in August 2012 is based on, and quotes, the same transcripts set forth in paragraphs 101 to 103 of the Complaint, with minor differences. Emergency Motion to Hold Certain Parties in Contempt, Doc. No. 326, Part 3, pp. 2–9. Mr. Annamalai did not sue the Spouse Defendants in the Ohio State Court Action nor apparently Mr. Kozar, but at least three defendants in that action are also named as defendants in the Complaint in the Ohio Federal Action. Mr. Kozar is shown on the certificate of service attached to the amended complaint in the Ohio State Court Action as the attorney for certain other defendants. *Id.* at 13.

A second set of allegedly defamatory statements is set forth in paragraph 131 on page 56 of the Complaint, ending on page 74. Paragraph 131 is included in Count I of the Complaint, which is labeled "Defa-

mation (alleged against all the defendants)." Complaint, p. 54. The Complaint does not identify which, if any, of the defendants made any particular one of the allegedly defamatory statements listed in paragraph 131. Those alleged statements appear to be postings on blogs purportedly once accessible on various Internet sites. Some, but not all, of those alleged postings are preceded by names of persons who are not otherwise identified. In paragraph 23 of the Complaint, Mr. Annamalai admits that statements he considers defamatory were made "anonymously or through the use of pseudonyms." Complaint, p. 8. Neither Mr. Kozar nor any of the Spouse Defendants is mentioned in paragraph 131.

The wives of Mr. Whitaker and Mr. Kepner do not know and never had any contact with Mr. Annamalai. Mr. Kepner's wife does not know how to blog or make posts on blogs. The wives of Mr. Whitaker and Mr. Kepner reside in Georgia and have no connections with Ohio.

Count II (the second Count II) of the Complaint is labeled "slander (alleged against all defendants)." Complaint, p. 75. It does not mention Mr. Kozar or any of the Spouse Defendants by name or otherwise identify them as the source of any specific posting on the Internet.

Count III of the Complaint is labeled "Intentional Infliction of Emotional Distress (alleged against all the defendants.)" Complaint, p. 76. It is based entirely on "Defendants' defamatory statements" without further explanation. Neither Mr. Kozar nor any of the Spouse Defendants is mentioned or otherwise identified as having made any specific defamatory statement.

Count IV of the Complaint is labeled "Tortious Interference with Business Relations (alleged against all the defendants)." Complaint, p. 77. It is based entirely on the alleged "Defendants" defamatory statements. Neither Mr. Kozar nor any of the Spouse Defendants is mentioned or otherwise identified as having made any specific defamatory statement.

Count V of the Complaint is labeled "Civil Conspiracy (alleged against all the defendants)." Complaint, p. 80. It is based on the allegation that "Defendants collectively orchestrated a campaign of defamation against" Mr. Annamalai. Neither Mr. Kozar nor any of the Spouse Defendants is mentioned or otherwise identified as having been a part of such a campaign.

Count VII of the Complaint is labeled "Interference with an Existing Business Contract (alleged against all the defendants)." Complaint, p. 83. It is based entirely on alleged "false and disparaging statements" about Mr. Annamalai with no clue as to what the statements were. Neither Mr. Kozar nor any of the Spouse Defendants is mentioned or otherwise identified as having made any specific false or disparaging statement about Mr. Annamalai.

Count VIII of the Complaint is labeled "Civil Fraud (alleged against all the defendants)." Complaint, p. 84. It is based on a hodgepodge of conclusory allegations of conspiracy to injure, fraud, deception, slander, and false representations. Neither Mr. Kozar nor any of the Spouse Defendants is named or otherwise identified in Count VIII with respect to any specific act forming the basis for Mr. Annamalai's conclusions.

Count IX of the Complaint is labeled "CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1985". Complaint, p. 86. Count IX contains a conclusory allegation that "Defendants" injured Mr. Annamalai as a result of a "conspiracy to deprive Plaintiff of their (sic) civil rights." This allegation, like others in the Complaint asserting that Mr. Kozar and the Spouse Defendants were engaged in a conspiracy or were part

of a gang or were acting in concert to harm Mr. Annamalai, is conclusory. Neither Mr. Kozar nor any of the Spouse Defendants is named or otherwise identified in Count IX with respect to any specific act forming the basis for Mr. Annamalai's conclusions.

Of the 196 numbered paragraphs in the Complaint, the Kozar and Spouse Defendants are mentioned by name in only 34 paragraphs: 23–24, 28, 30, 32, 43–54, 75, 78, 82, 87–98, 112, 114–116 and 170. The allegations in these paragraphs are in many instances irrelevant to the claims made, are replete with conclusory claims of misconduct, and contain no facts that would remotely support any of the conclusions of fraud, extortion, blackmail or conspiracy asserted by Mr. Annamalai.

Indeed, many, if not most, of the allegations referring to Mr. Kozar and the Spouse Defendants are scandalous. A prime example is paragraph 45 of the Complaint containing conclusory allegations about a Spouse Defendant. Other than the omission of the name, it reads exactly as follows:

> 45. Defendant . . . is a female individual. She has many shell entities to hide the stolen wealth of the innocent victims of many people like the plaintiff. She is highly connected with a lot of judicial people and uses them to hide all her criminal things. She has blackmailed the plaintiff with the help of the other defendant Ronald J. Kozar to give a 15–storied office tower owned by the family members of the plaintiff, who was under belief and information appraised for a value of $42 Million (insurance company appraised value as a reproduction cost). She has also blackmailed the plaintiff to give away $250,000.00 cash to one of her un reported foreign accounts to leave the plaintiff away from the gangsters arranged by a team of defendants in this lawsuit.

Complaint, ¶ 45, p. 17. These preposterous and scurrilous accusations show the utter lack of respect that Mr. Annamalai has for our judicial system and the rules that govern it, such as Rule 11 of the Federal Rules of Civil Procedure.

### 3. The Effect of the Filing of the Complaint.

In the opinions of Messrs. Whitaker and Kepner, each respective spouse was named as a defendant in the Complaint for the purpose of harassing the Trustee and his professionals in the hope of intimidating the Trustee into dropping his fraudulent transfer action involving the Building and ceasing his other efforts to collect on the judgment of the U.S. District Court against Defendants in the Adversary Proceeding, and in particular against Mr. Annamalai and Paru Selvam LLC.

The existence of the Ohio Federal Action is a distraction to Mr. Whitaker, adversely impacting on his service as Trustee. If he had been aware in 2009 that his wife would be sued in another state, that knowledge would have negatively impacted his desire to serve as Trustee. If he had known that she would be sued in another state on a spurious cause of action with inflammatory allegations, he would not have accepted the appointment.

Mr. Whitaker has served as a trustee in over a dozen cases. When asked if other trustees would share his reluctance to serve if it were permissible to sue their wives, he conceded it would be speculation to a point because he had not discussed the matter with other trustees, but he stated that based on his relationships with other trustees who served in similar types of cases, they would likely decline appointments under these circumstances. Mr. Whitaker also stated that he believed that professionals who regularly represent or provide services to trustees would also be reluctant to serve where their spouses could be sued in similar circumstances.

Mr. Annamalai has a "knee-jerk" propensity to file law suits against those who oppose him.

The Trustee incurred attorney's fees in excess of $5,000.00 in bringing the motion and in prosecuting it.

## C. Conclusions of Law.

 The Barton doctrine is the holding of the Supreme Court in *Barton v. Barbour*, 104 U.S. 126, 127, 26 L.Ed. 672 (1881) that " '[i]t is a general rule that before suit is brought against a receiver[,] leave of the court by which he was appointed must be obtained.' " *Barton* involved a receiver in state court, but lower courts have extended the Barton doctrine to lawsuits against a bankruptcy trustee. *Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir.2000). In *Carter*, the Eleventh Circuit held that if the claim asserted by a litigant in a suit against a bankruptcy trustee is related to the bankruptcy proceeding, the Barton doctrine applies to bar the filing of the action unless the bankruptcy court has authorized the litigant to proceed. " 'The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy.' *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir.1990)." *Carter, Id.* at 1253.

Mr. Annamalai will find these words familiar because they are taken directly from the order entered in this case on September 12, 2012, Doc. No. 334, in which the Court found Mr. Annamalai in contempt for violating the Barton doctrine by suing the Trustee and others in the Georgia Federal Action and by suing Kepner and Williamson in the Ohio State Court Action.

 The purpose of the Barton doctrine is to protect a bankruptcy trustee and his professionals from attacks in other courts that will impair their abilities to carry out their obligations in the bankruptcy case. "If [a trustee] is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded. This concern is most acute when suit is brought against the trustee while the bankruptcy proceeding is still going on. The threat of his being distracted or intimidated is then very great...." *Matter of Linton*, 136 F.3d 544, 545 (7th Cir.1998).

 Mr. Annamalai asserts in his response to the Contempt Motion that he sidestepped the Barton doctrine because he did not name the Trustee or his Atlanta attorneys as defendants, the Spouse Defendants are not professionals employed by the Trustee, and he purports to limit in the Complaint his claims against Mr. Kozar to a period prior to the entry of the judgments in the Adversary Proceeding.[3] On this basis, he asserts that the Court should deny the Contempt Motion.

The question the Contempt Motion and Mr. Annamalai's response presents is

---

**3.** "To avoid any future confusion, and unwanted/unwarranted motions of any sort in this court, the plaintiff wants to state very clearly on record that particularly with respect to all the cause of actions against Mr. Ronald J. Kozar is that he is being sued in this lawsuit 'only' " for all the alleged illegal acts which he has committed 'on or before 'August 2012' and also on his, personal capac- ity only, and NOT as an attorney of any sort to any one of the defendants or anyone associated or connected, linked knowingly or unknowingly with him in the past or the present to them in any way, in any means, in any manner to any of the defendants or their associates, family members, friends, and any kind of contact he has or had in the past and or present." Complaint, ¶ 24, pp. 8–9.

whether the filing of the Complaint against the Trustee's spouse, Mr. Kepner's spouse, Mr. Kozar and Mr. Kozar's spouse violated the Barton doctrine.

 The Court rejects Mr. Annamalai's formalistic defense to the Contempt Motion. It would be a grave mistake to limit the Barton doctrine only to cases in which a trustee or his professional is a named party to litigation. A trustee can be as much impeded in carrying out his duties by suing his spouse on trumped up claims as by suing him directly. In evaluating the limits of the Barton doctrine, the Court looks to the purpose and potential effect of the Complaint and the plausibility of the claims it asserts against persons closely associated with the Trustee.

The Court concludes that the Ohio Federal Action is related to this bankruptcy case because its prosecution "could conceivably have an effect on the estate being administered in bankruptcy" in that its purpose is to intimidate and harass the Trustee so as to force him to abandon the Building Litigation and to intimidate Mr. Kozar into abandoning his representation of Mr. Whitaker in the Building Litigation. The Court infers this purpose for several reasons.

First, the Complaint was filed only ten days after the Trustee obtained a preliminary injunction in the Building Litigation. The timing of the filing of the Complaint strongly suggests that its purpose is to derail the Building Litigation. This conclusion is further supported by the fact that the Complaint in the Ohio Federal Action contains allegations of defamation that formed the basis of his amended complaint in 2012 in the Ohio State Court Action against Messrs. Kepner and Williamson. Individuals sued in the Ohio State Court Action are also named in the Ohio Federal Action. But Mr. Annamalai, who has a propensity to sue those who oppose him, did not sue the Spouse Defen-

dants or apparently Mr. Kozar in the Ohio State Court Action in 2012. These facts suggest that his decision to include Mr. Kozar and the Spouse Defendants in the complaint was not based on any legitimate claim against them but was instead based on an objective of intimidating and harassing the Trustee and his professionals to drop the Building Litigation.

Second, the Complaint alleges no facts to show that it is plausible that Mr. Kozar or any of the Spouse Defendants could be liable to Mr. Annamalai under any count of the Complaint. The Complaint thus fails to state a claim upon which relief can be granted against Mr. Kozar and the Spouse Defendants. In his response, Mr. Annamalai points out that it is for the District Court in Ohio to determine whether the Complaint states a claim against the defendants on a Rule 12(b)(6) motion. That is of course true. This Court is permitted, however, to read the Complaint and draw inferences as to its purpose. The Court infers that because the Complaint fails to state a claim upon which relief can be granted with respect to Mr. Kozar and the Spouse Defendants, it was brought for another reason—to intimidate and harass the Trustee and his professionals.

Third, the conclusory allegations of criminal conduct by the spouses are so outrageous that they can have but one purpose—to force the Trustee to end his pursuit of collection of the judgments against Mr. Annamalai and Paru Selvam, LLC. It is notable that Mr. Annamalai does not show that he reported his conclusions to any law enforcement agency. Nor did he come to this Court to seek an order that his claims had nothing to with this case or that he should be permitted to pursue them even if they were related to this case. This strongly suggests that Mr. Annamalai knows that his conclusory allegations are false. The Court infers from the abusive nature of his allegations and

his failure to show that he reported alleged criminal conduct to the proper authorities that his purpose in making those allegations was to intimidate and harass the Trustee and his professionals into ceasing their efforts to collect the judgment against him and Paru Selvam, LLC.

Fourth, Mr. Annamalai admits that his purpose in suing the Spouse Defendants is to force the Trustee and his professionals to defend the Ohio Federal Action. He states in his response, "If their interest (sic) to save their wives (obviously that's the (sic) what they are attempting here) then they need to go to the right platform, where the subject matter of the litigation is pending." Annamalai's Response to the Contempt Motion, Doc. No. 428, p. 3. "They" are the Trustee and his professionals. His taunt is that "they" cannot stand by while he viciously attacks the character of the Spouse Defendants and seeks millions of dollars in damages from the Spouse Defendants, but "they" must defend the Ohio Federal Action. Mr. Annamalai has thus admitted that his targets are not the Spouse Defendants but rather the Trustee and his professionals.

The Court concludes that Mr. Kozar is named as a defendant in the Complaint only to harass him and thereby to force him to cease representing the Trustee. The Court further concludes that the Spouse Defendants are merely surrogates for the Trustee and his professionals in Mr. Annamalai's effort to prevent them from carrying out their duties under the Bankruptcy Code. In filing the Complaint, Mr. Annamalai deliberately and with contempt for this Court violated the Barton Doctrine.

Accordingly, the Trustee's motion to hold Mr. Annamalai in civil contempt is GRANTED. Mr. Annamalai is directed to dismiss the Complaint against Mr. Kozar and Spouse Defendants with prejudice **immediately and no later than 4:00 p.m. on Thursday, September 5, 2013.** He is further enjoined from filing or continuing the prosecution of any action in any court or governmental agency anywhere seeking any type of relief directly or indirectly against the Trustee, professionals employed by the Trustee, and any spouse or other relative of the Trustee or any such professionals or the property of any of them without first obtaining an order from this Court authorizing such a filing.

Further, Mr. Annamalai is sanctioned in the amount of $1,000.00 per day beginning on July 29, 2013, which is the date on which he filed the Complaint in the Ohio Federal Action, and ending on the day he dismisses with prejudice the Complaint against Mr. Kozar and the Spouse Defendants. (As of the date of this Order, the amount of the sanction is $33,000.00, and if he waits until the September 5 deadline to file such a dismissal, the sanction will be $40,000.00.) The Court further awards the sum of $5,000 to the firm of Scroggins and Williamson, P.C. as attorney's fees in representing the Trustee in bringing and prosecuting the contempt motion. Mr. Annamalai is directed to pay **on or before September 12, 2013** (1) the amount of the sanction (which will not be less than $33,000.00) to the Clerk of this Court on the 13th Floor, U.S. Courthouse, 75 Spring Street Atlanta, GA 30303 and (2) the attorney's fees of $5,000 to the firm of Scroggins and Williamson, P.C. at its address of record in this case.

The Clerk is directed to serve a copy of this Order on the Trustee, his counsel and Mr. Annamalai. Plaintiff's counsel is also directed to serve a copy of this order on Mr. Annamalai by email and certified mail, return receipt requested.

**IT IS ORDERED.**