[Cite as *Whitaker v. Paru Selvam, L.L.C.*, 2014-Ohio-3263.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

LLOYD T. WHITAKER, TRUSTEE

       Plaintiff-Appellee

v.

PARU SELVAM, LLC, et al.

       Defendant-Appellee


Appellate Case Nos.    26103 and 26108

Trial Court Case Nos.   2013-CV-3168
                          2013-CV-4016

(Civil Appeal from
 Common Pleas Court)

. . . . . . . . . . .

# O P I N I O N

Rendered on the 25th day of July, 2014.

. . . . . . . . . . .

RONALD J. KOZAR, Atty. Reg. No. 0041903, 40 North Main Street, Suite 2830, Dayton, Ohio 45423
      Attorney for Plaintiff-Appellee-Lloyd T. Whitaker, Trustee

STEPHEN P. LINNEN, Atty. Reg. No. 0071290, 605 North High Street, Suite 262, Columbus, Ohio 43215
      Attorney for Defendants-Appellants-Ashok Spiritual Healing Center and Siddhar Peedam, A NJ Non-Profit Corporation and for Defendant-Appellee-Paru Selvam, LLC

ANNAMALAI ANNAMALAI, Robert A. Deyton Detention Facility, 11866 Hastings Bridge Road, Lovejoy, Georgia, 30250
      Defendant-Appellant-Pro Se

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** In this case, Intervening Defendant-Appellant, Annamalai Annamalai ("Annamalai"), and Defendants-Appellants, Siddhar Peedam ("Siddhar") and Ashok Spiritual Healing Center ("Ashok"), appeal from a default judgment rendered in favor of Plaintiff-Appellee, Lloyd Whitaker, Trustee, Estate of Hindu Temple and Community Center of Georgia, Inc. ("Trustee").

**{¶ 2}** All the Appellants challenge the propriety of the default judgment, as well as the notice that preceded entry of the judgment. Siddhar and Ashok further contend that the default judgment entry failed to comply with the requirements of Civ.R. 55 (C). In addition, Annamalai contends that the trial court erred in refusing to allow him to file an amended answer and counterclaim, and in failing to consider arguments pertaining to the res judicata effect of a decision of the Bankruptcy Court for the Northern District of Georgia.

**{¶ 3}** We conclude that the trial court did not err in finding that Siddhar and Ashok were properly served with the complaint and failed to timely answer. These defendants also received an opportunity to show in writing why the default judgment should not be entered, and availed themselves of the opportunity. They, therefore, received all process that they were due under Civ.R. 55(A). Furthermore, assuming for purposes of argument that a procedural irregularity occurred, Siddhar and Ashok waived any error by failing to object in the trial court. The trial court also complied with Civ.R.55(C), because the default judgment awarded the same relief that had been requested in the complaint.

**{¶ 4}** We further conclude that the trial court did not abuse its discretion in failing to allow the filing of Annamalai's proposed amended answer and counterclaim. Justice did not

require the filing of the answer and counterclaim. Finally, the trial court did not err in failing to consider the application of res judicata, as the matter was not properly raised and was not before the court. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

{¶ 5} In August 2009, the Hindu Temple and Community Center of Georgia, Inc. ("Hindu Temple"), filed a bankruptcy petition in the United States Bankruptcy Court for the Northern Division of Georgia. *See In re Hindu Temple and Community Center of Georgia, Inc.*, Bankr. N.D. Ga. No. 09-82915, 2013 WL 8214672, *3 (March 5, 2013). Lloyd Whitaker was appointed as Chapter 11 Trustee in November 2009. *Id.* at *4. In the same month, the Trustee filed a complaint commencing an adversary proceeding against Annamalai, a number of individuals with whom Annamalai was associated, and a corporate entity that Annamalai controlled. *In re Hindu Temple and Community Center of Georgia, Inc.*, 502 B.R. 881, 884 (Bankr.N.D.Ga. 2013).

{¶ 6} "The complaint [in the adversary proceeding] was subsequently amended to drop certain defendants and to add new defendants, including several other corporate entities controlled by Mr. Annamalai, one of which is Paru Selvam, LLC. The complaint as amended contained several counts against various defendants, including counts for avoidance and recovery of fraudulent transfers made by the Debtor to Mr. Annamalai and a count based on the alter ego doctrine. In the alter ego count, the Trustee alleged that Mr. Annamalai was the alter ego of the Debtor and that two other corporate defendants, including Paru Selvam, LLC, were his alter egos, making all of them liable for the debts of the Debtor. After more than two years of litigation, the [bankruptcy] Court conducted a trial in the Adversary Proceeding in July 2012." *Id.*

{¶ 7}    During the pendency of the bankruptcy proceedings, Paru Selvam, LLC ("Paru") purchased real property in downtown Dayton, Ohio, located at 32-34 North Main Street, and known as the Old Key Bank Building ("Key Bank Property").   The purchase was made on April 10, 2010.   While Paru and Annamalai were awaiting trial in the adversary proceeding, Paru conveyed the Key Bank Property to Siddhar on April 5, 2012.   Siddhar was another company allegedly controlled by Annamalai.

{¶ 8}    In September 2012, the bankruptcy court entered a partial judgment against Annamalai and others on certain counts of an amended complaint, and also submitted proposed findings of fact and conclusions of law on other counts, including the alter ego count against Paru.   *In re Hindu Temple*, 502 B.R. at 885.   Subsequently, in January 2013, the District Court for the Northern District of Georgia adopted the Bankruptcy Court's proposed findings of fact and conclusions of law in the adversary proceeding, and entered judgment against Annamalai, Paru, and others, for money damages.   *Id.*

{¶ 9}    In the adversary proceeding, the Trustee was given an award of $1,430,795 jointly and severally against Annamalai and Paru, plus the amount of claims allowed as of the date of the judgment in the bankruptcy case against the Hindu Temple, less the amount of claims subsequently disallowed.    Doc. #1, Complaint, ¶ 6-8, and Ex. A attached to the Complaint.   This judgment occurred in January 2013.   *Id.*

{¶ 10}    In May 2013, the Montgomery County Treasurer filed a foreclosure action against Siddhar and Paru in the Common Pleas Court for Montgomery County, Ohio, based on delinquent taxes of approximately $175,000.   This action was designated as Case No. 2013 CV 03168.   After the foreclosure action was filed, Siddhar transferred the Key Bank Property to Ashok on June 23, 2013.

{¶ 11}   The Trustee then filed a complaint against Paru, Siddhar, and Ashok on July 8, 2013, in the Common Pleas Court for Montgomery County, Ohio.  This action was designated as Case No. 2013 CV 04016.  The Trustee set out the facts pertaining to the bankruptcy proceedings in Georgia, and alleged that Annamalai controlled Paru, Siddhar, and Ashok, and that these companies were Insiders of Paru and of each other for purposes of R.C. 1336.01(G).  In addition, the Trustee contended that both Paru and Siddhar were debtors of the Trustee when they transferred the real estate.  The Trustee further alleged that the transfers to Siddhar and Ashok were made with actual intent to hinder, delay or defraud creditors, and were made without reasonably equivalent value from the transferees, at a time when the transferors reasonably believed they would be found liable for debts that they otherwise would not be able to pay, leaving the transferors substantially without assets to cover the debts.

{¶ 12}   In view of the foregoing facts, the Trustee asked the court to set aside the transfers to Siddhar and Ashok so that the real estate could be treated as an asset of Paru for purposes of satisfying the Trustee's judgment.  The Trustee also asked the court to prohibit further transfers of the Key Bank Property, and to appoint a receiver to take possession of the real estate pending the lawsuit.

{¶ 13}   After the court granted a temporary restraining order prohibiting further transfers of the building without prior court approval, a magistrate held a preliminary injunction hearing in July 2013.  Following a hearing, the magistrate issued a preliminary injunction, concluding that, among other things, the Trustee had shown a likelihood of success on the merits of the fraudulent transfer claim.  None of the defendants appeared for the hearing, but shortly thereafter, counsel for Ashok entered an appearance in the action and filed objections to the magistrate's order.   Shortly after filing the objections, counsel for Ashok was granted permission

to withdraw as counsel.

{¶ 14} In early September 2013, Annamalai filed a motion to intervene in the fraudulent transfer action, claiming that he had an interest in the litigation based on the judgment that had been rendered against him and Paru in the bankruptcy court. Annamalai also filed an answer, but the trial court struck the answer because Annamalai was not yet a party to the action. The court then consolidated the foreclosure and fraudulent transfer actions.

{¶ 15} An agreed entry was filed on October 3, 2013, granting Annamalai's motion to intervene. The entry noted that for purposes of this case, Paru and Annamalai were liable interchangeably for each other's debts, including any debt owed the Trustee as a result of the bankruptcy case. On October 12, 2013, Annamalai filed an answer, pro se.

{¶ 16} Prior to the time that Annamalai filed his answer, the Trustee had been attempting to perfect service on Paru, Ashok, and Siddhar. On October 16, 2013, a return of personal service was filed, indicating that service had been perfected for these parties, by making personal service on Annamalai on October 15, 2013. Annamalai then filed a "notice" contending that the service of process had been "fraudulent," and denying that he was an agent of Paru, Ashok, and Siddhar for purposes of service of process.

{¶ 17} After Paru, Ashok, and Siddhar failed to file answers, the Trustee moved for default judgment on November 13, 2013. Annamalai then filed a motion to strike the motion for default judgment. However, Annamalai did not sign the motion; it was signed by someone else "by permission." On December 24, 2013, counsel for Siddhar and Ashok filed a memorandum in opposition to the motion for default judgment and a motion for leave to file an answer and counterclaim. They filed another memorandum opposing default judgment on December 30, 2013.

{¶ 18} Subsequently, in February 2014, the trial court ruled on all pending motions, including the motion for default judgment. As pertinent here, the court overruled the objections to the magistrate's report and adopted the magistrate's decision granting the preliminary injunction prohibiting transfers of the Key Bank Property. The court also concluded that Paru, Siddhar, and Ashok had been properly served, and granted default judgment against these defendants. In addition, the trial court held that Annamalai could not rebut the presumption of service on the defendants, and could not respond to the default judgment motion because the court had only permitted Annamalai to intervene in accordance with his individual interests. Finally, the court overruled the motion of Ashok and Siddhar for leave to file an answer and counterclaim, as well as Annamalai's motion for leave to file an amended answer and counterclaim.

{¶ 19} Annamalai, Ashok, and Siddhar appeal from the judgment of the trial court. Paru did not file a notice of appeal from the judgment.

{¶ 20} For purposes of convenience, we will first address the assignments of error raised by Ashok and Siddhar (collectively, the "Corporate Defendants"). We will then consider Annamalai's assignments of error.

## II. Did the Trial Court Err in Granting Default Judgment?

{¶ 21} The Corporate Defendants' First Assignment of Error states that:

The Trial Court Erred in Granting Default Judgment in Favor of the Appellee in This Case When There Had Been No Service of Process Upon the Appellants.

{¶ 22} Under this assignment of error, the Corporate Defendants argue that the trial

court lacked personal jurisdiction over them because Annamalai was not an authorized agent and did not have authority to accept service. They also contend that service upon Annamalai would not be reasonably calculated to provide notice to them.

{¶ 23} "In *Mullane v. Cent. Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865, the United States Supreme Court enunciated the standard for determining whether service of process comports with due process, holding: 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, 875 N.E.2d 582, ¶ 13, quoting *Mullane* at 314.

{¶ 24} In the trial court, the Corporate Defendants filed an affidavit of their president, Parvathi Sivanadiyan ("Parvathi"), who stated that both Ashok and Siddhar are foreign corporations who are not licensed to do business in Ohio and do not have a statutory agent in Ohio.[1]

{¶ 25} With respect to service on defendants outside the state, Civ.R. 4.3(A) provides that:

> Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state or is a resident of this state who is absent from this state. "Person" includes an individual, an individual's executor, administrator, or other personal representative, or a corporation, partnership,

---

[1] Parvathi is the wife of Intervening Defendant, Annamalai.

association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:

(1) Transacting any business in this state:

* * *

(6) Having an interest in, using, or possessing real property in this state * * *.

{¶ 26}   According to the complaint, both Ashok and Siddhar owned real property in the State of Ohio pursuant to the alleged fraudulent transfers.   Thus, under Civ.R. 4.3(B), they could have been served by the clerk using United States certified or express mail, by a commercial carrier, or by personal service.  *See* Civ.R. 4.1(A)(1) and (A)(3).   The Trustee attempted to serve Ashok and Siddhar by certified mail a number of times, and then made personal service on them through Annamalai.

{¶ 27}   Where plaintiffs follow the Ohio Civil Rules that govern service of process, "courts presume that service is proper unless the defendant rebuts this presumption with sufficient evidence of nonservice."   (Citations omitted.)  *Money Tree Loan Co. v. Williams*, 169 Ohio App.3d 336, 2006-Ohio-5568, 862 N.E.2d 885, ¶ 10 (8th Dist.).    The Corporate Defendants contend that they rebutted the presumption of proper service based on Parvathi's affidavit, which states that Annamalai was not an officer or authorized agent of  Ashok or Siddhar, and was not authorized to accept service of process on their behalf.

{¶ 28}   Civ.R. 4.2(F) provides that service of process, as authorized by the Ohio Civil Rules, shall be made "[u]pon a corporation either domestic or foreign: by serving the agent authorized by appointment or by law to receive service of process; or by serving the corporation

at any of its usual places of business by a method authorized under Civ.R.4.1(A)(1); or by serving an officer or a managing or general agent of the corporation * * *."

{¶ 29} This rule does not define the term "general agent." However, a "general agent" has been defined as "an agent authorized to conduct a series of transactions involving a continuity of service." *Sheriff Electric Service v. Greater Allen Ame Church,* 2d Dist. Montgomery No. 7628, 1982 WL 3784, *1 (Aug. 25, 1982), citing Restatement of the Law 2d, Agency, Section 3 (1958).

{¶ 30} In contrast to Parvathi's affidavit, the record before the trial court was replete with evidence that Annamalai was a general agent of the Corporate Defendants. In this regard, we stress that "[i]n determining whether a defendant has sufficiently rebutted the presumption of valid service, a trial court may assess the credibility and competency of the submitted evidence demonstrating non-service." (Citation omitted.) *Bowling v. Grange Mut. Cas. Co.*, 10th Dist. Franklin No. 05AP-51, 2005-Ohio-5924, ¶ 33.

{¶ 31} As a preliminary point, we note that Parvathi never denied that the Corporate Defendants had received service; she only denied that her husband, Annamalai, was authorized to receive it. Again, however, the facts indicate otherwise. An affidavit attached to the Trustee's motion for a temporary restraining order indicates the following facts: Paru purchased the Key Bank Property for $525,000 in April 2010, after the bankruptcy case had been filed. Paru was one of the parties involved in the bankruptcy, and no mortgage or other financing securing the purchase was reflected. With a trial in the bankruptcy case imminent, Paru conveyed the property to Siddhar, without any consideration. Annamalai controlled Siddhar and Paru, and his personal e-mail address included the designation "Siddhar Peedam Group of Temples." Affidavit of Ronald Kozar, p. 1, attached to Doc. #6.

**{¶ 32}** The Kozar affidavit further indicated that after a judgment of more than one million dollars was entered jointly and severally against Paru and Annamalai in the bankruptcy case, a foreclosure case was filed against Paru and Siddhar in the Montgomery County Common Pleas Court of Common Pleas. Shortly thereafter, Siddhar conveyed the property to Ashok, without any consideration.

**{¶ 33}** Furthermore, evidence at the preliminary injunction hearing indicated that Siddhar shared the same address as Paru, i.e., 32 North Main Street, Dayton, Ohio, and also shared a leading officer who appeared to be Annamalai's employee or assistant. Likewise, Ashok and Paru shared an officer. In addition, Annamalai's wife, Parvathi, was an officer of both Ashok and Paru, and was Ashok's registered agent. Based on these facts and others, the magistrate concluded that Annamalai, who had been notified of the injunction hearing, was so associated with the Corporate Defendants that notice to him should be considered notice to them.

**{¶ 34}** Moreover, when Ashok's counsel entered an appearance for Ashok and filed objections to the magistrate's decision, Ashok did not say that it had failed to receive notice of the preliminary injunction hearing; instead, Ashok said it did not receive notice of the injunction hearing "in time to allow it to reach terms with an attorney to appear on its behalf." Doc. #24, p. 5. However, Annamalai and an attorney associated with Annamalai were the only individuals notified about the injunction hearing.

**{¶ 35}** Moreover, when Annamalai filed his motion to intervene in the present action, he indicated that he had already been deemed the alter ego of Paru in the bankruptcy litigation. As a further matter, after the preliminary injunction was granted, Annamalai, acting on behalf of Ashok, offered a prospective buyer various options for the purchase of the Key Bank Property.

See Doc. #74, Ronald Kozar Affidavit, ¶ 2-5, and Exhibit A attached to the Kozar Affidavit. In the e-mail offering the purchase options, Annamalai used the name "Dr. Selvam." Annamalai uses this name, as well as Annamalai Annamalai, and the title of "Dr. Commander Selvam," to refer to himself. *See, e.g.*, Doc. #104, Reply of Defendant Annamalai for Motion for Sanctions Against Mr. Kozar & Mr. Whitaker, and emails attached to that motion.

**{¶ 36}** The e-mail Annamalai sent regarding the potential sale of the Key Bank Property also referenced the website of www.siddharpeedam.org. On October 16, 2013 (during the lawsuit), this website contained a picture of Annamalai, welcoming visitors to the worldwide website of "Siddhar Peedam Group of Temples, Centers, and Ashrams." Doc. #106, Memorandum Opposing Motion of October 25, Affidavit of Ronald Kozar, ¶ 2-3, and Exhibit A, p. 1, attached to the Kozar Affidavit. On the website, Annamalai referred to himself as "Commander Selvam," "Dr. Commander Selvam," and "Swami Sri Selvam Siddhar." He also provided his own email address ("avtemples.aol.com") as the source of information to visitors. *Id.* at pp.2-3. In this regard, the website stated that:

> Please visit other pages, our associate web sites and videos. For any more additional information or to schedule an appointment with Guru Maharaj Swamiji Sri Selvam Siddar Dr Commander Selvam, please email us at avtemples.aol.com or call us in USA. * * * [2]

*Id.* at p. 3.

**{¶ 37}** Accordingly, the record contains substantial evidence supporting the trial court's decision that service of process was complete with regard to the Corporate Defendants,

---

[2] This is the same email address that Annamalai used when offering, on Ashok's behalf, the various options for the purchase of the Key Bank Property.

due to the personal service that Annamalai accepted on behalf of these defendants. The Corporate Defendants' First Assignment of Error is overruled.

### III.   Was There Proper Notice of the Default Judgment?

{¶ 38}   The Corporate Defendants' Second Assignment of Error states that:

The Trial Court Erred by Granting the November 13, 2013 Motion for Default Judgment of the Appellee and by Denying the Motion for Leave of the Appellants Without Giving the Appellants the Required Seven Days Notice of Its Intention to Award Default Judgment Required by Civ.R. 55(A).

{¶ 39}   Under this assignment of error, the Corporate Defendants contend that the trial court failed to comply with Civ.R. 55(A), because it did not provide them with written notice of the application for default judgment at least seven days prior to the hearing on the motion. In this regard, the Corporate Defendants rely on the fact that they had appeared in the action and were entitled to notice.

{¶ 40}   As a preliminary matter, we note that we review a trial court's decision to grant a default judgment for abuse of discretion. *See, e.g., Mueller v. Hammann*, 1st Dist. Hamilton Nos. C-120799, C-130231, 2013-Ohio-5098, ¶ 7, citing *Zuljevic v. Midland-Ross Corp. Unicast Div.*, 62 Ohio St.2d 116, 403 N.E.2d 986 (1980).

{¶ 41}   The requirements for default judgments are outlined in Civ.R. 55(A), which provides that:

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the party entitled to a judgment by default shall apply in writing or orally to the court therefor; but no

judgment by default shall be entered against a minor or an incompetent person unless represented in the action by a guardian or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least seven days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall when applicable accord a right of trial by jury to the parties.

{¶ 42} According to the record, the default judgment motion was filed on November 13, 2013. Ashok had previously appeared in the action by filing objections to the magistrate's report, but had never filed an answer. Siddhar and Ashok also appeared thereafter, by filing a combined motion in opposition to the motion for default judgment and motion for leave to file an answer and counterclaim on December 24, 2013. They also filed a second motion in opposition to the default judgment motion on December 30, 2013. Thus, they had appeared in the action and were entitled to notice of the application for default judgment under Civ.R. 55(A).

{¶ 43} The motion for default judgment contains a certificate of service indicating that it was served on Ashok and Siddhar on November 13, 2013, and indeed, they did receive notice of the motion, because they replied to it. The Trustee also filed a notice of pending motions, including the default judgment motions, on December 5, 2013, and served the notice on Ashok and Siddhar by regular mail.

**{¶ 44}** In their motions opposing default judgment, the Corporate Defendants did not raise the issue of Civ.R. 55(A). Instead, their sole argument related to the alleged lack of proper service of process. After receiving memoranda from both sides, the trial court issued a decision granting the default judgment on February 3, 2014. The trial court did not file a notice of a hearing on the motion. However, we conclude that notice was not required under the circumstances involved in this case. Furthermore, assuming for purposes of argument that a procedural irregularity occurred, it was waived by the Corporate Defendants.

**{¶ 45}** In *Asset Acceptance LLC v. Springer*, 2d Dist. Montgomery No. 20263, 2004-Ohio-5934, we stated that "[t]he evident purpose of the requirement in Civ.R. 55(A) for at least seven days written notice prior to the hearing on an application for default judgment is to allow the respondent an opportunity, either in writing, or by appearing at the hearing, to show cause why default judgment should not be entered." *Id.* at ¶ 9.

**{¶ 46}** As we noted previously, " '[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, 875 N.E.2d 582, at ¶ 13, quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. 652, 94 L.Ed. 865. In the case before us, the defendants received an opportunity to show in writing why the default judgment should not be entered, and availed themselves of the opportunity. Therefore, the Corporate Defendants received all process that they were due.

**{¶ 47}** In this regard, we note that we have reviewed the application of Civ.R. 55(A) in many default judgment cases from this district. The case before us is unlike these other cases, which typically involve default judgments that were granted immediately or within a few days

after the application, without the opposing party having been notified of the application, and without the opposing party having actually responded to the motion. *See, e.g.*, *Asset Acceptance* at ¶ 6 (motion granted the day after it was filed); *April Ents., Inc. v. Estate of McCabe*, 2d Dist. Montgomery No. 24065, 2011-Ohio-3271, ¶ 10 (default judgment granted the day after the motion was filed); *Wells Fargo Fin. Natl. Bank v. Douglas*, 2d Dist. Montgomery No. 24349, 2011-Ohio-3739, ¶ 8-9 (default judgment granted the same day that the motion was filed); and *Miamisburg Motel v. Huntington Natl. Bank*, 88 Ohio App.3d 117, 121, 623 N.E.2d 163 (2d Dist.1993) (default judgment granted the same day that the motion was filed). Under the circumstances, we cannot see how the Corporate Defendants would have benefitted from further process – or how they were prejudiced. The Corporate Defendants have also not suggested how they would have benefitted.

{¶ 48} Furthermore, assuming for purposes of argument that the trial court committed a procedural error by failing to file a "hearing" notice, the Corporate Defendants waived the right to object because they did not raise this matter in the trial court. "A party who fails to bring an alleged error to the trial court's attention waives the right to assert that error on appeal." *Ashmore v. Eversole,* 2d Dist. Montgomery No. 15672, 1996 WL 685568, *6 (Nov. 29, 1996), citing *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St.3d 121, 123, 512 N.E.2d 640 (1987). Even where error has been waived, we may still recognize plain error. However, "[t]he plain-error doctrine is not favored in appeals of civil cases, 'and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.' " *Stewart v. Nazir*, 2d Dist. Montgomery No. 23806, 2010-Ohio-6346, ¶ 26, quoting *Goldfuss v.*

*Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus. For the reasons previously mentioned, the case before us does not involve exceptional circumstances warranting application of the plain error doctrine.

{¶ 49} In arguing that the default judgment should be reversed, the Corporate Defendants contend that any alleged failure to comply with Civ.R. 55(A) renders the judgment void. However, we disagree. We have previously held that:

> Assuming, for the sake of argument, that [the defendant] had made an appearance entitling it to notice, its failure to receive such notice of the hearing on the motion for default judgment made the judgment voidable, but not void. See *Miamisburg Motel*, 88 Ohio App.3d [at]118 [,623 N.E.2d 163] (affirming the trial court's refusal to vacate judgment because the motion to vacate was untimely, notwithstanding lack of notice of the application for default judgment). But, see, *Plant Equip., Inc. v. Nationwide Control Serv. Inc.* (2003), 155 Ohio App.3d 46, 798 N.E.2d 1202. As such, [the defendant's] failure to raise this issue in the trial court when it filed its Civ.R. 60(B) motion waived it for purposes of appeal. *Gentile v. Ristas*, 160 Ohio App.3d 765, 2005-Ohio-2197, 828 N.E.2d 1021, ¶ 74.

*Natl. City Mtge. Co. v. Johnson & Assoc. Financial Servs., Inc.,* 2d Dist. Montgomery No. 21164, 2006-Ohio-2364, ¶ 16.

{¶ 50} Other districts have reached the same conclusion. *See, e.g., Deutsche Bank Natl. Trust Co. v. Lagowski*, 7th Dist. Belmont No. 10 BE 28, 2012-Ohio-1684, ¶ 52-54; *GMAC Mtge., L.L.C. v. Lee*, 10th Dist. Franklin No. 11AP-796, 2012-Ohio-1157, ¶ 15; and *Aurora Loan Servs., L.L.C. v. Cart*, 11th Dist. Ashtabula No. 2010-A-0024, 2011-Ohio-2450.

{¶ 51} Accordingly, the Second Assignment of Error is overruled.

IV.   Did the Default Judgment Motion Conform to Civ.R. 55(C)?

**{¶ 52}**   The Corporate Defendants' Third Assignment of Error states that:

The Trial Court Erred by Granting the November 13, 2013 Motion for Default Judgment of the Appellee When Said Motion Did Not Conform With the Requirements of Civ.R. 55(C).

**{¶ 53}**   Under this assignment of error, the Corporate Defendants contend that the trial court abused its discretion in granting default judgment because the Trustee's motion failed to comply with Civ.R. 55(C), which subjects all default judgments to Civ.R. 54(C).

**{¶ 54}**   Civ.R. 55(C) states that "[i]n all cases a judgment by default is subject to the limitations of Rule 54(C)."   In turn, Civ.R. 54(C) provides that "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment."

**{¶ 55}**   "The primary purpose of Civ. R. 54(C)'s limitations on default judgments is to ensure that defendants are clearly notified of the maximum potential liability to which they are exposed, so that they may make an informed, rational choice to either: (1) enable a default judgment by not responding, or (2) invest the time and expense involved in defending an action. The plain language of Civ. R. 54(C) unequivocally requires this notification of the maximum potential liability to be communicated through a demand for judgment in the complaint." (Citation omitted.)   *National City Bank v. Shuman*, 9th Dist. Summit No. 21484, 2003-Ohio-6116, ¶ 11.

**{¶ 56}**   We applied this rule in *Thomason v. Hamilton*, 2d Dist. Greene No.  07-CA-60, 2008-Ohio-3492, where the amount awarded on default judgment exceeded the amount properly warranted by the complaint.   Specifically, the plaintiff had requested attorney fees in the

complaint, which he was not entitled to receive. We, therefore, reversed the judgment with respect to the damages, and remanded the case for recalculation of damages. *Id.* at ¶ 9-10.

**{¶ 57}** In the case before us, the complaint alleged that the transfers of the Key Bank Property to the Corporate Defendants were fraudulent and were made with intent do hinder or defraud creditors. The complaint further alleged that the Corporate Defendants received the real estate for no or inadequate consideration. The Trustee, therefore, asked the court to set aside the transfers to the Corporate Defendants and issue an order prohibiting any further transfers of the real estate. Doc. #1, Complaint, ¶ 16. This is the same relief that the trial court granted in the default judgment. Doc. #120, pp. 30-31.

**{¶ 58}** Based on the preceding discussion, the Third Assignment of Error is overruled.

**{¶ 59}** Having overruled all the assignments of error of the Corporate Defendants, we will now consider Annamalai's assignments of error.

V. Did the Trial Court Err in Entering Default Judgment Against Annamalai?

**{¶ 60}** Annamalai's First Assignment of Error states that:

The Trial Court Erred in Entering a Default Judgment Against Annamalai.

**{¶ 61}** Under this assignment of error, Annamalai contends, without discussion, that the trial court erred in entering a default judgment against him. However, the trial court did not enter a default judgment against Annamalai. Annamalai was not named as a party in the complaint, and the trial court allowed him to intervene solely for purposes of protecting his own interests, since he was liable jointly and severally with Paru. However, no default judgment was rendered against Annamalai in the fraudulent conveyance action.

**{¶ 62}** Annamalai's brief is not well-organized, as he also challenges service of process

without connecting it to a specific assignment of error. To the extent that Annamalai's discussion of the issues in his brief contests service of process, his arguments have been previously considered and rejected in our discussion of the Corporate Defendants' First Assignment of Error.

{¶ 63}  Accordingly, Annamalai's First Assignment of Error is overruled.


VI.  Did the Trial Court Fail to Comply with Civ.R. 55(A)?

{¶ 64}  Annamalai's Second Assignment of Error states that:

The Trial Court Erred in Failing to Give 7 Days Notice and Hearing Before Granting Default Judgment Pursuant to the Provisions of Civ.R. 55(A).

{¶ 65}  This assignment of error raises arguments that have already been considered and rejected in connection with the Corporate Defendants' Second and Third Assignments of Error. Annamalai is also in a different position than the Corporate Defendants. No default judgment was rendered against Annamalai. As the trial court noted, Annamalai was only allowed to intervene in order to protect his own interests; he was not permitted to represent the interests of the Corporate Defendants, since he was not an attorney. In this regard, R.C. 4705.01 provides that:

No person shall be permitted to practice as an attorney and counselor at law, or to commence, conduct, or defend any action or proceeding in which the person is not a party concerned, either by using or subscribing the person's own name, or the name of another person, unless the person has been admitted to the bar by order of the supreme court in compliance with its prescribed and published rules.

**{¶ 66}** Although Annamalai had the right to file pleadings on his own behalf, he was not an attorney, and did not have the right to file pleadings or to assert claims and defenses on behalf of the other parties. What Annamalai cannot do explicitly, he also cannot do implicitly. Accordingly, Annamalai's Second Assignment of Error is overruled.

VII. Did the Trial Court Err in Overruling the Motion

for Leave to File an Amended Answer and Counterclaim?

**{¶ 67}** Annamalai's Third Assignment of Error states that:

The Trial Court Erred in Denying the Appellant Leave to File His Amended Answer and Counterclaim and in Failing to Allow Him an Opportunity to Pursue Those Claims and the Affirmative Defense of Res Judicata.

**{¶ 68}** Under this assignment of error, Annamalai contends that the trial court erred in refusing to allow him to file an amended answer and counterclaim to assert the affirmative defense of res judicata. Annamalai filed his original answer on October 12, 2013, after being given permission by the trial court to intervene. Subsequently, on December 5, 2013, Annamalai filed a motion for leave to file an amended answer and counterclaim. The amended answer that was attached raised various affirmative defenses, including res judicata and unclean hands. The attached counterclaim asserted claims of fraud, defamation, conspiracy, fraudulent liens, and intentional infliction of emotional distress. The motion for leave was not signed by Annamalai; his name was signed by an unidentified person, "by permission." See Doc. #111, p. 9.

**{¶ 69}** The trial court overruled the motion as moot and struck it from the record, based on the fact that the default judgment had been granted. The court had also previously held that

Annamalai's memorandum opposing the default judgment should be struck from the record because it was signed by an undisclosed party "by permission" on behalf of Annamalai, in violation of Civ.R. 11.

{¶ 70} In responding to Annamalai's argument, the Trustee maintains that the motion for leave was not signed as required by Civ.R. 11. The Trustee further argues that the motion failed to comply with Civ.R. 7(B)(1) because it was not properly styled, and also contained scandalous and insulting allegations that would have to be struck under Civ.R. 12(F), even if leave to amend had been granted.

{¶ 71} Civ.R. 15(A) provides that:

A party may amend its pleading once as a matter of course within twenty-eight days after serving it or, if the pleading is one to which a responsive pleading is required within twenty-eight days after service of a responsive pleading or twenty-eight days after service of a motion under Civ.R. 12(B), (E), or (F), whichever is earlier. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires.

{¶ 72} Because more than 28 days had elapsed since the filing of Annamalai's answer, he was required to obtain the court's leave to file an amended answer. "Despite the liberal policy in granting motions to amend, the appellate review of a trial court's decision regarding a motion to amend consists of determining whether the trial judge's decision was an abuse of discretion, not whether it was the same decision we might have made." *State ex rel. Rogers v. Republic Environmental Sys., Inc.*, 2d Dist. Montgomery Nos. 23513, 23644, 23723, 2010-Ohio-5523, ¶ 36, citing *Wilmington Steel Products, Inc. v. Cleveland Electric*

*Illuminating Co.*, 60 Ohio St.3d 120, 122, 573 N.E.2d 622 (1991). (Other citation omitted.) " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable." *Id.*, quoting *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985).

**{¶ 73}** After applying this standard, we conclude that the trial court did not abuse its discretion in refusing to allow amendment of the answer. We have read the entire docket and make the following observations. First, we note that the action had been pending for a considerable period of time before Annamalai asked for leave to amend his answer and file a counterclaim. Annamalai originally attempted to intervene in September 2013 and tendered an answer at that time, which the court struck because he was not yet a party. Between that time and the request to file the amended answer and counterclaim, Annamalai filed many pleadings, in which he made the assertions being raised in the amended answer and counterclaim, including the fact that the Trustee's claim was barred by the findings in the prior bankruptcy action. *See, e.g*, Doc. #75, Reply Brief - Memorandum in Support of Annamalai Annamalai's Motion to Intervene, filed on September 23, 2013, p. 2.

**{¶ 74}** Since Annamalai was apparently aware of this alleged defense before he filed his answer in October 2013, there is no reason why he could not have asserted res judicata then. Although Annamalai is a pro se litigant, "[l]itigants who choose to proceed pro se are presumed to know the law and correct procedure, and are held to the same standards as other litigants." *Yocum v. Means*, 2d Dist. Darke No. 1576, 2002-Ohio-3803, ¶ 20, citing *Kilroy v. B.H. Lakeshore Co.*, 111 Ohio App.3d 357, 363, 676 N.E.2d 171 (8th Dist.1996).

**{¶ 75}** As an additional matter, while the actions were pending in the trial court, Annamalai was held in contempt by the bankruptcy court, based on the fact that he had filed a

complaint in the United States District Court for the Southern District of Ohio against Ronald Kozar, the attorney representing the Trustee in the case before us, the wives of both Kozar and the Trustee, and various other parties. See *In re Hindu Temple*, 502 B.R. at 891.

{¶ 76} Annamalai's 90-page federal complaint was filed on July 29, 2013, and requested "$125 million in compensatory and punitive damages in connection with an alleged conspiracy to defame and destroy Annamalai and a temple he had formed in Ohio." *Id*. at 886. A number of the allegations and claims in the federal action are similar to the matters alleged in the proposed answer and counterclaim, as well as other documents in the case before us. The allegations in the federal case included claims of defamation and intentional infliction of emotional distress, and charges that the defendants "were engaged in a conspiracy or were part of a gang or were acting in concert to harm Mr. Annamalai," that the defendants were attempting to steal Annamalai's wealth, and so on. *Id.* at 887-888. The bankruptcy court noted that: "These preposterous and scurrilous accusations show the utter lack of respect that Mr. Annamalai has for our judicial system and the rules that govern it, such as Rule 11 of the Federal Rules of Civil Procedure." *Id.* at 888.

{¶ 77} The bankruptcy court further considered whether the federal litigation violated the *Barton* doctrine, which precludes lawsuits against bankruptcy receivers or trustees without the prior approval of the bankruptcy court. *Id.* at 889, citing *Barton v. Barbour*, 104 U.S. 126, 127, 26 L.Ed. 672 (1881). " ' "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." ' " (Citation omitted.) *Id.*, quoting *Carter v. Rodgers*, 220 F.3d 1249, 1253 (11th Cir.2000).

{¶ 78} In discussing this issue, the bankruptcy court specifically mentioned the

litigation in the case before us, which it had designated as the " 'Building Litigation.' " *In re Hindu Temple*, 502 B.R. at 885. In this regard, the bankruptcy court stated that:

The Court concludes that the Ohio Federal Action is related to this bankruptcy case because its prosecution "could conceivably have an effect on the estate being administered in bankruptcy" in that its purpose is to intimidate and harass the Trustee so as to force him to abandon the Building Litigation and to intimidate Mr. Kozar into abandoning his representation of Mr. Whitaker in the Building Litigation. The Court infers this purpose for several reasons.

First, the Complaint was filed only ten days after the Trustee obtained a preliminary injunction in the Building Litigation. The timing of the filing of the Complaint strongly suggests that its purpose is to derail the Building Litigation. This conclusion is further supported by the fact that the Complaint in the Ohio Federal Action contains allegations of defamation that formed the basis of his amended complaint in 2012 in the Ohio State Court Action against Messrs. Kepner and Williamson. Individuals sued in the Ohio State Court Action are also named in the Ohio Federal Action. But Mr. Annamalai, who has a propensity to sue those who oppose him, did not sue the Spouse Defendants or apparently Mr. Kozar in the Ohio State Court Action in 2012. These facts suggest that his decision to include Mr. Kozar and the Spouse Defendants in the complaint was not based on any legitimate claim against them but was instead based on an objective of intimidating and harassing the Trustee and his professionals to drop the Building Litigation.

Second, the Complaint alleges no facts to show that it is plausible that Mr.

Kozar or any of the Spouse Defendants could be liable to Mr. Annamalai under any count of the Complaint. The Complaint thus fails to state a claim upon which relief can be granted against Mr. Kozar and the Spouse Defendants. In his response, Mr. Annamalai points out that it is for the District Court in Ohio to determine whether the Complaint states a claim against the defendants on a Rule 12(b)(6) motion. That is of course true. This Court is permitted, however, to read the Complaint and draw inferences as to its purpose. The Court infers that because the Complaint fails to state a claim upon which relief can be granted with respect to Mr. Kozar and the Spouse Defendants, it was brought for another reason – to intimidate and harass the Trustee and his professionals.

Third, the conclusory allegations of criminal conduct by the spouses are so outrageous that they can have but one purpose – to force the Trustee to end his pursuit of collection of the judgments against Mr. Annamalai and Paru Selvam, LLC. It is notable that Mr. Annamalai does not show that he reported his conclusions to any law enforcement agency. Nor did he come to this Court to seek an order that his claims had nothing to with this case or that he should be permitted to pursue them even if they were related to this case. This strongly suggests that Mr. Annamalai knows that his conclusory allegations are false. The Court infers from the abusive nature of his allegations and his failure to show that he reported alleged criminal conduct to the proper authorities that his purpose in making those allegations was to intimidate and harass the Trustee and his professionals into ceasing their efforts to collect the judgment against him and Paru Selvam, LLC.

*In re Hindu Temple*, 502 B.R. at 890-891.

{¶ 79} The bankruptcy court, therefore, held Annamalai in civil contempt and awarded a fine of $1,000 per day beginning on the date he filed the Ohio federal action, and ending when he dismissed the claims against Kozar and the spouse defendants. *Id.* at 891.

{¶ 80} As was noted, Annamalai makes the same kinds of charges in the proposed answer and counterclaim. For example, Annamalai states in the answer that the Trustee is playing a "shell game" with Annamalai's assets, and that the Trustee and Kozar are engaged in a conspiracy to take over his property. Doc. #111, pp. 1-2. He also states in the counterclaim that the Trustee "has brought this lawsuit purely to pocket as much as possible through this litigation"; that the Trustee and his friends "are working together to collapse the personal and business life of Annamalai"; and that the Trustee had "conspired with Mr. Kozar * * * to steal the wealth of the defendants." Doc. #111, pp. 5, 6, and 7.

{¶ 81} In proposing the amended answer and counterclaim, Annamalai did not offer any evidence that the bankruptcy court had authorized his claims against the Trustee – nor would any approval have been even remotely likely, given the decision the bankruptcy court rendered only a few months before Annamalai attempted to file the counterclaim. Accordingly, we find no abuse of discretion in the trial court's decision not to allow the filing of an amended answer and counterclaim. In light of this holding, we need not discuss the Trustee's arguments pertaining to the application of Civ.R. 11 – although we do note our prior authority holding that a pro se litigant cannot authorize another, even by a power of attorney, to file pleadings on his or her behalf, because such constitutes the unauthorized practice of law. *KeyBank Natl. Assn. v. Sarameh*, 2d Dist. Montgomery No. 25411, 2013-Ohio-2576, ¶ 13.

{¶ 82} Based on the preceding discussion, Annamalai's Third Assignment of Error is

overruled.

VIII.   Did the Trial Court Err in Failing to Consider Arguments about Res Judicata?

**{¶ 83}**   Annamalai's Fourth Assignment of Error states that:

The Trial Court Erred in Failing to Consider the Appellant's Arguments Regarding the Res Judicata Effect of the Decision of the Bankruptcy Court for the Northern District of Georgia.

**{¶ 84}**   Under this assignment of error, Annamalai contends that the trial court erred in failing to consider the affirmative defense of res judicata, which he attempted to raise in his amended answer.   According to Annamalai, findings by the bankruptcy court preclude the Trustee from attempting to proceed against the Key Bank Property.   The bankruptcy court apparently disagreed, as it was well aware of the litigation that had been filed in Ohio to find assets to satisfy the judgments against Annamalai and Paru.   *In re Hindu Temple*, 502 B.R. at 885.

**{¶ 85}**   However, putting this observation aside, the fact remains that the defense of res judicata was never raised, because Annamalai's amended answer was never filed.   The trial court was under no obligation to consider a matter that had not been properly raised. Furthermore, as the trial court noted, Annamalai was only allowed to intervene in order to protect his own interests; he was not permitted to represent the interests of the Corporate Defendants, since he was not an attorney.   As we previously noted, R.C. 4705.01 prohibits the unauthorized practice of law.

**{¶ 86}**   As we also have stressed, Annamalai had the right to file pleadings on his own behalf, but he did not have the right to file pleadings or to assert claims and defenses of the other

parties.  And, as we emphasized previously, the complaint did not ask for relief against Annamalai, and the trial court did not render a judgment against him.  Therefore, there was no basis for considering Annamalai's claim about res judicata.  Accordingly, Annamalai's Fourth Assignment of Error is overruled.

## IX.  Conclusion

{¶ 87}  All of the assignments of error of Siddhar, Ashok, and Annamalai having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J. and FAIN, J., concur.

Copies mailed to:

Ronald J. Kozar
Stephen P. Linnen
Annamalai Annamalai
Hon. Dennis J. Langer