[Cite as *Whitaker v. Paru Selvam, L.L.C.*, 2015-Ohio-3166.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

LLOYD T. WHITAKER, TRUSTEE,                 :
et al.
                                            :

                                            :    C.A. CASE NO.   26555
      Plaintiffs-Appellees                  :

                                            :    T.C. NO. 13CV3168, 13CV4016
v.
                                            :    (Civil appeal from
                                            :     Common Pleas Court)
PARU SELVAM, LLC, et al.                     :

      Defendants-Appellants                 :

                                            :

                                            :

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 7th day of August, 2015.

. . . . . . . . . .

RONALD J. KOZAR, Atty, Reg. No. 0041903, Kettering Tower, Suite 2830, 40 N. Main Street, Dayton, Ohio 45423
      Attorney for Plaintiff-Appellee Lloyd Whitaker, Trustee

STEPHEN P. LINNEN, Atty. Reg. No. 0071290, 605 N. High Street, #612, Columbus, Ohio 43215
      Attorney for Defendants-Appellants Paru Selvam, LLC, Ashok Spiritual Healing Center, Siddhar Peedam, Inc.

. . . . . . . . . . . .

DONOVAN, J.

    **{¶ 1}**  This matter is before the Court on the Amended Notice of Appeal of Paru

Selvam L.L.C. ("Paru"), Siddhar Peedham Inc. ("Siddhar"), and Ashok Spiritual Healing Center ("Ashok"), filed June 10, 2015. The Amended Notice of Appeal provides that the Appellants are appealing "the final appealable orders dated December 18, 2014 as revised by the trial court on May 11, 2015," and the record reflects that on May 5, 2015, this Court remanded the matter to the trial court for the entry of a final appealable order on the motion of Appellants.

{¶ 2} We note that this Court has previously addressed the instant matter in *Whitaker v. Paru Selvam*, *LLC,* 2d Dist. Montgomery Nos. 26103, 26108, 2014-Ohio-3263 ("*Whitaker I*"). By way of background, we will initially set forth the facts and course of proceedings herein, as recited in *Whitaker I*, ¶ 5- 18, as follows:

In August 2009, the Hindu Temple and Community Center of Georgia, Inc. ("Hindu Temple"), filed a bankruptcy petition in the United States Bankruptcy Court for the Northern District of Georgia. *See In re Hindu Temple and Community Center of Georgia, Inc.,* Bankr.N.D. Ga. No. 09-82915, 2013 WL 8214672, *3 (March 5, 2012). Lloyd Whitaker was appointed as Chapter 11 Trustee in November 2009. *Id.* at *4. In the same month, the Trustee filed a complaint commencing an adversary proceeding against [Annamalai Annamalai ("Annamalai")], a number of individuals with whom Annamalai was associated, and a corporate entity that Annamalai controlled. *In re Hindu Temple and Community Center of Georgia, Inc.*, 502 B.R. 881, 884 (Bankr.N.D.Ga.2013).

"The complaint [in the adversary proceeding] was subsequently amended to drop certain defendants and to add new defendants, including

several other corporate entities controlled by Mr. Annamalai, one of which is [Paru]. The complaint as amended contained several counts against various defendants, including counts for avoidance and recovery of fraudulent transfers made by the Debtor to Mr. Annamalai and a count based on the alter ego doctrine. In the alter ego count, the Trustee alleged that Mr. Annamalai was the alter ego of the Debtor and that two other corporate defendants, including [Paru], were his alter egos, making all of them liable for the debts of the Debtor. After more than two years of litigation, the [bankruptcy] Court conducted a trial in the Adversary Proceeding in July 2012." *Id.*

During the pendency of the bankruptcy proceedings, [Paru] purchased real property in downtown Dayton, Ohio, located at 32-34 North Main Street, and known as the Old Key Bank Building ("Key Bank Property"). The purchase was made on April 10, 2010. While Paru and Annamalai were awaiting trial in the adversary proceeding, Paru conveyed the Key Bank Property to Siddhar on April 5, 2012. Siddhar was another company allegedly controlled by Annamalai.

In September 2012, the bankruptcy court entered a partial judgment against Annamalai and others on certain counts of an amended complaint, and also submitted proposed findings of fact and conclusions of law on other counts, including the alter ego count against Paru. *In re Hindu Temple*, 502 B.R. at 885. Subsequently, in January 2013, the District Court for the Northern District of Georgia adopted the Bankruptcy Court's

proposed findings of fact and conclusions of law in the adversary proceeding, and entered judgment against Annamalai, Paru, and others, for money damages. *Id.*

In the adversary proceeding, the Trustee was given an award of $1,430,795 jointly and severally against Annamalai and Paru, plus the amount of claims allowed as of the date of the judgment in the bankruptcy case against the Hindu Temple, less the amount of claims subsequently disallowed. * * *. This judgment occurred in January 2013. *Id.*

In May 2013, the Montgomery County Treasurer filed a foreclosure action against Siddhar and Paru in the Common Pleas Court for Montgomery County, Ohio, based on delinquent taxes of approximately $175,000. This action was designated as Case No.2013 CV 03168. After the foreclosure action was filed, Siddhar transferred the Key Bank Property to Ashok on June 23, 2013.

The Trustee then filed a complaint against Paru, Siddhar, and Ashok on July 8, 2013, in the Common Pleas Court for Montgomery County, Ohio. This action was designated as Case No. 2013 CV 04016. The trustee set out the facts pertaining to the bankruptcy proceedings in Georgia, and alleged that Annnamalai controlled Paru, Siddhar, and Ashok, and that these companies were Insiders of Paru and of each other for purposes of R.C. 1336.01(G) [of the Uniform Fraudulent Transfer Act, R.C. Chapter 1336.]. In addition, the Trustee contended that both Paru and Siddhar were debtors of the Trustee when they transferred the real estate. The

Trustee further alleged that the transfers to Siddhar and Ashok were made with actual intent to hinder, delay or defraud creditors, and were made without reasonably equivalent value from the transferees, at a time when the transferors reasonably believed they would be found liable for debts that they otherwise would not be able to pay, leaving the transferors substantially without assets to cover the debts.

In view of the foregoing, the Trustee asked the court to set aside the transfers to Siddhar and Ashok so that the real estate could be treated as an asset of Paru for purposes of satisfying the Trustee's judgment. The Trustee also asked the court to prohibit further transfers of the Key Bank Property, and to appoint a receiver to take possession of the real estate pending the lawsuit.

After the court granted a temporary restraining order prohibiting further transfers of the building without prior court approval, a magistrate held a preliminary injunction hearing in July 2013. Following a hearing, the magistrate issued a preliminary injunction, concluding that, among other things, the Trustee had shown a likelihood of success on the merits of the fraudulent transfer claim. None of the defendants appeared for the hearing, but shortly thereafter, counsel for Ashok entered an appearance in the action and filed objections to the magistrate's order[1]. Shortly after filing the objections, counsel for Ashok was granted permission to withdraw as counsel.

[1] On July 24, 2013 Ashok filed an "Objection of Defendant, Ashok Spiritual Healing Center, to the Magistrate's Decision, and Motion for Relief Under Civ.R. 60(B)."

In early September 2013, Annnamalai filed a motion to intervene in the fraudulent transfer action, claiming that he had an interest in the litigation based on the judgment that had been rendered against him and Paru in the bankruptcy court. Annamalai also filed an answer, but the trial court struck the answer because Annnamalai was not yet a party to the action. The court then consolidated the foreclosure and fraudulent transfer actions.

An agreed entry was filed on October 3, 2013, granting Annamalai's motion to intervene. The entry noted that for purposes of this case, Paru and Annamalai were liable interchangeably for each other's debts, including any debt owed the Trustee as a result of the bankruptcy case. On October 12, 2013, Annamalai filed an answer, pro se.

Prior to the time that Annamalai filed his answer, the Trustee had been attempting to perfect service on Paru, Ashok, and Siddhar. On October 16, 2013, a return of personal service was filed, indicating that service had been perfected for these parties, by making personal service on Annamalai on October 15, 2013. Annamalai then filed a "notice" contending that service of process had been "fraudulent," and denying that he was an agent of Paru, Ashok, and Siddhar for purposes of service of process.

After Paru, Ashok, and Siddhar failed to file answers, the Trustee moved for default judgment on November 13, 2013. Annamalai then filed a motion to strike the motion for default judgment. However, Annamalai

did not sign the motion; it was signed by someone else "by permission." On December 24, 2013, counsel for Siddhar and Ashok filed a memorandum in opposition to the motion for default judgment and a motion for leave to file an answer and counterclaim. They filed another memorandum opposing default judgment on December 30, 2013.

Subsequently, in February 2014, the trial court ruled on all pending motions, including the motion for default judgment. * * * [T]he court overruled the objections to the magistrate's report and adopted the magistrate's decision granting the preliminary injunction prohibiting transfers of the Key Bank Property. The court also concluded that Paru, Siddhar, and Ashok had been properly served, and granted default judgment against these defendants. In addition, the trial court held that Annamalai could not rebut the presumption of service on the defendants, and could not respond to the default judgment motion because the court had only permitted Annamalai to intervene in accordance with his individual interests. Finally, the court overruled the motion of Ashok and Siddhar for leave to file an answer and counterclaim, as well as Annamalai's motion for leave to file an amended answer and counterclaim.[2]

---

[2] The court further determined that the allegations of the complaint in Case No. 2013 CV 4016 "are deemed admitted in toto" by Paru, Siddhar, and Ashok, and it determined that the transfers of the Key Bank Building from Paru to Siddhar and from Siddhar to Ashok "are hereby set aside and declared fraudulent under Revised Code § 1336.07(A)(1), such that the transferred real estate may be treated as an asset of Paru Selvam for purposes of satisfying the judgment obtained by the Trustee in the U.S. District Court for the Northern District of Georgia on January 24, 2013, in Case No. 1:12-CV-4310-TWT."

**{¶ 3}** Annamalai, Ashok, and Siddhar appealed from the judgment of the trial court, while Paru did not file a notice of appeal. *Id.*, ¶ 19. On March 31, 2014, while the appeal was pending, the Trustee filed a motion to appoint a receiver to sell the Key Bank Building to satisfy the federal court judgment against Paru and Annamalai, and on April 26, 2014, the Trustee filed an amended motion to appoint receiver.

**{¶ 4}** On July 7, 2014, Paru, Siddhar, and Ashok filed a "Motion to Vacate Final Judgments Dated February 3, 2014," pursuant to Civ.R. 60(B), seeking relief from the default judgment. They argued that newly discovered evidence required the court to vacate the default judgment. They argued as follows:

> * * * [R]egarding the October 15 putative service of process in Georgia that has sadly been so much at issue here, a document filed four days later after the February Order may give this Court pause. The individual appointed as a process server by this Court was one "J. Robert Williamson of Scroggins & Williamson [sic], PC of Atlanta." This individual completed a return of successful service and later executed an affidavit attesting that he had obtained what he considers valid service on the Third-Party intervening defendant who was attending a hearing in district court in Georgia. Based on that, this Court entered its default judgment on February 3, 2014. Just days later, Mr. Williamson submitted an invoice to Plaintiff, attached hereto and incorporated herein as Exhibit C, on behalf of his law firm, himself a partner, for $835,795.00 in fees and $29,491.12 in expenses.

In Plaintiff's motion to appoint Mr. Williamson as process server, it was stated that Mr. Williamson is not a party to the present case. That is not untrue. Mr. Williamson is Plaintiff's attorney in the Georgia case, involving * * * substantially the same parties as this case. One may presume that how much of Mr. Williamson's bill for $865,286.12 gets paid, is contingent upon the outcome of this case, and the outcome of this case is presently contingent upon the default judgment being upheld, which is contingent upon a finding that Mr. Williamson obtained valid service upon the Defendants. Whatever else might be said, this seems an ill-advised choice of process server.

**{¶ 5}** Paru, Siddhar and Ashok further asserted that Ashok properly answered the complaint by means of the filing of the July 24, 2013 "Objection of Defendant, Ashok Spiritual Healing Center, to the Magistrate's Decision, and Motion for Relief under Civ.R. 60(B)," and that "the February Order was made in the mistaken or inadvertent assumption that the Corporate Defendants, particularly [Ashok], had not answered the complaint."

**{¶ 6}** The Magistrate held a hearing on the receivership motion on July 15, 2014 and granted the motion. The Magistrate noted that "between the judgment against Intervenor Annamalai Annamalai and Paru Selvam, LLC, approximately $2,000,000 is owed by those parties to the Trustee in his fiduciary capacity." The Magistrate determined in part as follows:

One issue raised by the parties opposing the appointment of the receiver and requesting a stay of execution of the Court's February 3, 2014 judgment is the claim that Mr. Whitaker, as Trustee, liquidated assets

through the bankruptcy proceedings that left little or no monies owing on the underlying judgments. In the alternative, those parties argue that the Plaintiff, Mr. Whitaker as Trustee, should have been able to liquidate bankruptcy estate assets in such a fashion as to be able to satisfy the judgments against the Defendants and Intervenor.

Mr. Whitaker testified that through his efforts, he raised approximately $89,000 from an auction of statues and personal property items located in the Georgia temple. He raised approximately $25,000 to $30,000 dollars as a result of the sale of one of Mr. Annamalai Annamalai's motor vehicles. He raised $130,000 from Anderson Lake Properties in exchange for the Trustee's agreement to waive the automatic stay related to one parcel of temple property.

However, the Trustee was adamant that none of those monies were applied toward the judgments set out above, and that no payments have been made on those judgments. The monies were applied elsewhere with the Bankruptcy Court's approval. He further testified that in addition to the judgments against the parties herein, there are also unpaid administration expenses in the Bankruptcy Court totaling approximately $1,000,000. Mr. Whitaker testified that should the building (Key Bank/Paru Tower) be sold, (5%) of the net proceeds would go toward unsecured creditors in the bankruptcy case, (12%) of the net proceeds would go to the Internal Revenue Service, and the remainder would be applied towards administration fees in the bankruptcy case.

With regards to the building itself, the parties stipulated that there is no water service, even for emergency purposes, currently delivered to the building. The parties stipulated that the building is uninsured. The parties stipulated that there is at least $100,000 in property taxes owed to Montgomery County.

Plaintiff is asking that the Court appoint a Receiver, and that the Receiver be Jonathan F. Hung of the law firm of Green and Green Lawyers. Mr. Hung testified that he has been licensed to practice law since 2007. From January 2008 through 2010, Mr. Hung was employed in the Green County Prosecutor's office primarily in the civil division handling, among other things, tax foreclosure cases. He has worked as an associate for Green and Green lawyers since 2010. He specializes in cases involving real property. Through his work as an attorney, he has participated in the sale of numerous commercial properties and in at least four cases that employed the use of a Receiver. However, he did concede that he has never served as a Receiver and that he does not hold a real estate broker's license.

The undersigned Magistrate questioned Mr. Hung whether or not he believed he was capable of acting as the Receiver in this matter, given the fact that he has never served as a Receiver before, and that the property is a very large downtown office building. In the response to the Court's questions, Mr. Hung opined that if the building were filled with tenants, that the numerous issues occupancy would generate would extend beyond his

current level of expertise. However, because the building essentially sits empty, he looks at the bulk of the Receiver's duties, regardless of whether or not it is him or someone else, to include making sure that the building is secure; making sure that there are emergency utilities for the building[]; making sure that the building is properly insured and enlisting a number of experts to help with the sale of the building.

Mr. Hung testified that he would charge $195 per hour for his time and that if paralegals or administrative assistants performed any work in this matter, their rate would be billed at a substantially lower hourly rate.

* * *

This writer is mindful of the argument raised by Defendants' counsel and Mr. Annamalai Annamalai as to the potential harm should the building be sold prior to a decision from the Court of Appeals. However, in requiring a supersedeas bond [of $750,000.00], and in appointing a Receiver, as is about to be recommended, the Court is cognizant that it will take time for the Receiver to investigate what method of sale will result in the highest financial return, and that once that determination is made, there will be additional time needed in order to list, sell, and close on the property. Allowing the Receiver to begin the process of readying the building for sale does not necessarily mean that the Court will approve the Receiver's request for the Court to approve a potential sale. The Court can address a potential sale when the issue becomes ripe.

With regards [to] the appointment of a Receiver, the Court hereby finds that pursuant to Section 2735 of the Ohio Revised Code, that appointment of a Receiver in this case is proper and warranted. However, in reaching this decision, the Court is more concerned about the temporary emergency measures that should be put in place to preserve the building's value which include, but are not limited to, securing the building, providing emergency utilities should the same be deemed appropriate by zoning and/or fire department officials, and maintaining proper insurance on the building. In addition, it is prudent to allow the Receiver to begin the process of selling the building. However, as noted above, it is the Magistrate's belief that that process is going to take some reasonable period of time, and that the Court still retains authority to step in should it deem finalizing and approving the sale of the property to be premature in light of the pending case in the Court of Appeals.

{¶ 7} The Magistrate granted to the Receiver the following powers:

A. To offer the Building for sale, and to contract with realtors or other sales professionals for that purpose; provided that no sale of the Building shall take place without the Court's approval after notice and a hearing to all interested parties;

B. To solicit proposals to purchase the Building, either with or assistance (sic) of realtors or other real-estate sales professionals, and to seek permission from the Court to close a sale of the Building;

C.   To open such bank accounts in the Receiver's name as may be necessary or helpful to the performance of his powers hereunder;

D.   To accept or reject listing agreements into which the present owner or any previous owner of the Building may have entered that is still in effect[;]

E.   To move the Court to provide him with such further powers, not expressly enumerated in this order, as may be necessary or helpful to the procurement of a prompt and fair sale of the Building and the presentation (sic) of the Building's value.

{¶ 8}   In ruling on the initial appeal, on July 25, 2014, in response to Ashok's and Siddhar's argument that the trial court erred in granting default judgment in favor of the Trustee because Ashok and Siddhar had not been served with process, this Court determined that "the record contains substantial evidence supporting the trial court's decision that service of process was complete with regard to [Ashok and Siddhar], due to the personal service that Annamalai accepted on behalf of these defendants." *Whitaker I*, 2014-Ohio-3263, ¶ 37. This Court further determined that Ashok and Siddhar "received all the process that they were due."  *Id.*, ¶ 46.

{¶ 9}   Paru, Siddhar, and Ashok filed objections to the Magistrate's Decision on August 13, 2014, asserting that there was no reliable evidence as to the unpaid judgment amounts, that the Magistrate's recommendation misstated the testimony and qualifications of the receiver, that the recommendation grants Hung "only powers narrowly related to selling the building" and not to the building's safety and security, that Paru was not liable for the judgment against Annamalai, that the bond amount is not justified, and that the recommendation overestimates the length of time involved to sell

the property without adequately addressing the need to secure and insure the building and provide utilities.

{¶ 10} On December 18, 2014 (and May 11, 2015), the trial court determined in part as follows regarding the July 7, 2014 Civ.R. 60(B) motion and the August 13, 2014 objections to the Magistrate's July 18, 2014 Decision:

**1. Defendants' *Motion to Vacate Final Judgments Dated February 3, 2014***

The Court notes that on July 25, 2014, the Second District Court of Appeals filed an *Opinion* concerning the Court's *Decision, Order, and Entry on All Pending Motions* filed February 3, 2014, wherein the Second District Court of Appeals affirmed the Court's February 3, 2014 Decision in its entirety. * * * Although Defendants recognize in their *Motion to Vacate Final Judgments Dated February 3, 2014* that "[t]his case is presently on appeal to the Second District, [but]* * * [this Court] may accept the filing of this Motion[,]" the Second District thereafter filed its *Opinion* affirming the Court's February 3, 2014 Decision while Defendants' motion was pending before the Court. The Court finds that Defendants may not now rely upon Civ.R. 60(B) as an alternative device through which to challenge the legal merits of the *Opinion* of the Second District Court of Appeals. Accordingly, the Court hereby overrules *Defendants' Motion to Vacate Final Judgments Dated February 3, 2014*.

**2. Defendants' *Objections to Magistrate's Decision***

Upon *de novo* review of the findings of fact, procedural history, and

conclusions of law contained in the *Magistrate's Decision*, as well as the video transcript, the court agrees with such conclusions in their entirety. The Court finds that the *Magistrate's Decision* extensively analyzed and applied the proper legal standards to determine that a stay of execution of the Court's decision would require a supersedeas bond of $750,000.00 and the written acknowledgement by Defendants that they will abide by the terms of the permanent injunction adopted by the Court, as well as the appointment of the Receiver, Jonathan F. Hung * * *, of the real property at issue upon the terms contained therein. The Court further agrees with Trustee that "there is no reason not to proceed with a sale of the building so that the proceeds may be applied to the unpaid taxes and * * * to the Trustee's judgment[,]" and further that "there is no reason not to permit th[e] sale to be handled, under the court's guidance and subject to the court's approval, by Mr. Hung." Therefore, the Court hereby overrules Defendants' *Objections to Magistrate's Decision* and adopts the *Magistrate's Decision* in its entirety, including its findings, conclusions, and decision as the Court's own, and this entry shall serve and be the final judgment entry and order of the Court.

{¶ 11} Paru, Ashok, and Siddhar assert two assignments of error herein. Their first assigned error is as follows:

THE TRIAL COURT ERRED BY NOT GRANTING RELIEF FROM JUDGMENT.

**{¶ 12}** Appellants "acknowledge that this Court has previously upheld the service, notice, and relief regarding the instant default judgment, but respectfully ask this Court to nonetheless review matters relating to the judgment, as raised subsequently in their Motion to Vacate." Appellants assert that in *Portfolio Recovery Associates, LLC v. Thacker*, 2d Dist. Clark No. 2008 CA 119, 2009-Ohio-4406, "this Court, noting the importance of jurisdiction, found that a hearing should be held when a defendant submits evidence regarding an irregularity of service, in support of a Rule 60(B) motion." Appellants assert that "there are two issues raised in Defendants' Motion to Vacate that this Court should consider."

**{¶ 13}** According to Appellants, first, "based on evidence not available at the time the previous notice of appeal was filed it came to light that the process server, as a partner in a professional corporation that was owed over one million dollars by Appellee, had a stake, probably worth hundreds of thousands of dollars, in having service perfected against Appellants." Appellants assert as follows:

To be clear: Appellants cannot and do not conclusively claim that Mr. Williamson did anything improper. Indeed, lacking further inquiry by the trial court, as was requested by Appellants in their Motion to Vacate, it may never be known exactly what happened. In light of the enormous stake in the outcome that inures to Mr. Williamson, which subsequently came to light, and the fact that Appellants followed the *Thacker* procedure, presenting evidence and requesting a hearing and relief from the default judgment, the court below should have exercised its discretion to conduct a hearing to inquire further into the matter, taking evidence from both sides in

order to scrutinize the propriety of service in this case. The evidence may or may not reveal an impropriety, but this will never be known without conducting a hearing on the matter.

**{¶ 14}** Appellants further assert as follows:

Second, the court below overlooked, either by mistake or inadvertence, the fact that at least one of the Appellants had in fact appeared, back on July 24, 2013, and defended this case by filing their objection to the magistrate's decision regarding the preliminary relief, in conjunction with a misfortunately styled motion for relief from judgment. The trial court did not consider the appearance, either due to an evident mistake or inadvertence as contemplated by Rule 60(B), which should have led the court to vacate the judgment and allow the case to proceed normally.

As noted above, the fact of a party making an appearance or defense causes a default judgment to be <u>void</u>, not merely voidable. A court lacks jurisdiction to enter further orders on a void judgment and certainly lacks jurisdiction to appoint a receiver in furtherance of execution upon a void judgment. On this issue, this Court should review the trial court's decision on a *de novo* standard of review, since jurisdiction is a purely legal question.

**{¶ 15}** The Trustee responds that "Judge Langer did not abuse his discretion. His stated reason for denying the motion to vacate was that the motion raised arguments predating the 2014 appeal and that the final adjudication of that appeal therefore required

the motion's denial."   According to the Trustee, "even if Judge Langer's reasoning were not dispositive, the test governing motions under Rule 60(B) would still require affirmance."

{¶ 16}  Civ.R. 60(B) provides in relevant part as follows:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:   (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B) * * *.

{¶ 17}  As this Court has previously noted:

In order to prevail on a Civ.R. 60(B) motion, the moving party must demonstrate (1) the existence of a meritorious claim or defense; (2) entitlement to relief under one of the grounds stated in Civ.R. 60(B)(1)(-5); and (3) that the motion was made within a "reasonable time."   [*GTE Automatic Electric v. ARC Industries,* 47 Ohio St.2d 146, 150, 351 N.E.2d 113 (1976)].   If *any* of these requirements are not met, the trial court must overrule the Civ.R. 60(B) motion.   *Rose Chevrolet Inc. v. Adams* (1988), 36 Ohio St.3d 17, 20, 520 N.E.2d 564, citing *Svoboda v. Brunswick* (1983), 6 Ohio St.3d 348, 351, 453 N.E.2d 648. Although Civ.R. 60(B) is a remedial rule requiring liberal construction favoring determination of cases on the merits, the rule cannot be used to emasculate procedural rules and time limits.   *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 79, 514 N.E.2d 1122.

*Burgess v. Safe Auto*, 2d Dist. Montgomery No. 20941, 2005-Ohio-6829, ¶ 23. "Motions

for relief from judgment under Civ.R. 60(B) are addressed to the sound discretion of the trial court, and the court's ruling 'will not be disturbed on appeal absent a showing of abuse of discretion.' * * *." *Jackson v. Hendrickson* 2d Dist. Montgomery No. 21921, 2008-Ohio- 491, ¶ 28. " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. * * * A decision is unreasonable if there is no sound reasoning process that would support that decision. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 553 N.E.2d 597 (1990) * * *." *Bohme v. Bohme*, 2d Dist. Montgomery No. 26021, 2015-Ohio-339, ¶ 11.

{¶ 18} We further note that "[i]t is well-established that a motion under Civ.R. 60(B) may not be used as a substitute for a direct appeal. * * * ." *Ford Motor Credit Co. v. Cunningham*, 2d Dist. Montgomery No. 20341, 2004-Ohio-6226, ¶ 14. We also note that a " 'motion for relief from judgment cannot be predicated upon the argument that the trial court made a mistake in rendering its decision. * * * The type of mistake contemplated by Civ.R. (B)(1) is a mistake by a party or his legal representative, not a mistake by the trial court in its legal analysis. * * *.' " *Id.*, ¶ 15, quoting *Tonti v. Tonti*, 10th Dist. Franklin Nos. 03AP-494, 03AP-728, 2004-Ohio-2529, ¶ 130.

{¶ 19} As this Court has previously noted, the doctrine of res judicata "bars all claims that were litigated in a prior action as well as claims which might have been litigated in that action." *Deaton v. Burney,* 107 Ohio App.3d 407, 669 N.E.2d 1 (2d Dist. 1995). We agree with the Trustee that this Court's adjudication of Appellants' direct appeal, which affirmed the grant of default judgment in favor of Appellee, required the denial of their Motion to Vacate the default judgment. In other words, Appellants could not rely upon Civ.R. 60(B) to assert arguments which are not only barred by the doctrine

of res judicata but also entirely speculative. There being no abuse of discretion, Appellant's first assigned error is overruled.

{¶ 20} Appellants' second assigned error is as follows:

THE TRIAL COURT ERRED IN APPOINTING A RECEIVER IN THIS CASE.

{¶ 21} Appellants assert that the trial court did not find by clear and convincing evidence that a receiver was appropriate. They assert that neither "the court nor the magistrate specified under which section of R.C. 2735.01 the receiver was being appointed, which is necessary in applying the available evidence." Appellants assert that the receivership order was entered "while there was a pending foreclosure case. The record also reflects that the claims filed by Appellee were filed on July 8, 2013, during the pendency of the Montgomery County Treasurer's foreclosure case, which was filed May 23, 2013, and the certificate of judgment, which serves as the basis for the receivership, was filed even later * * *." Appellants asserts that under the doctrine of lis pendens, pursuant to R.C. 2703.26, "any interests allegedly created in real property while a foreclosure is pending against that property are subject to the outcome in the foreclosure." Appellants assert that the Trustee's "interest and concurrent ability to seek execution of its judgment by means of appointing a receiver must await on the outcome of the Treasurer's foreclosure." Appellants assert as follows:

Of course Appellee will argue that Appellee and the Treasurer are metaphorically "two horses pulling in the same direction" and that back taxes will be paid upon the sale of the Subject Real Estate.

However, this turns *lis pendens* on its head. Being subject to the

outcome of a pending lawsuit does not mean that a litigant can create a new interest in the property, file suit on the basis of that interest, and then make the parties in the prior lawsuit whole ex post facto based upon the outcome in the second lawsuit. This is the opposite of *lis pendens*.

{¶ 22} Appellants further assert that consolidation is not a substitute for joinder of claims and parties that entitles the Trustee to appoint a receiver. According to Appellants, "procedural consolidation does not get Appellee around the fact that his claims must wait upon the outcome of the Treasurer's foreclosure – not the other way around. As such, at the time Appellee filed this lawsuit, he lacked the standing to obtain relief until such time as the pending foreclosure is complete." According to Appellants, courts of common pleas "lack jurisdiction over interests and claims that lack standing due to *lis pendens*." Pursuant to *Federal Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, Appellants assert that procedural "rules cannot be deployed to cure a lack of standing. * * * When the evidence demonstrates that plaintiff filed a complaint without standing to do so, a common pleas court must dismiss the complaint." Appellants "note that this issue is raised on direct appeal of the order appointing the receiver in this case, not on appeal from the Rule 60(B) motion." According to Appellants, if "a party's interest is barred from enforcement due to *lis pendens,* that party lacks standing to enforce the interest, and therefore a trial court lacks jurisdiction over that claim and cannot allow it to proceed until the pending litigation is concluded." Appellants assert as follows:

> In the present case, Appellee filed a complaint to appoint a receiver to sell the Subject Real Estate with the knowledge that there was a

foreclosure pending against the Subject Real Estate already. The trial court, having barred Defendants from raising the issue by filing an answer allowed Appellee to proceed in furtherance of execution – of a judgment for which it did not yet have standing to enforce due to *lis pendens.*

{¶ 23} The Trustee responds that Appellants "cannot attribute prejudice to the trial court's failure to use the phrase 'clear and convincing' or to cite a subsection of the receivership statute." According to the Trustee, lis pendens does not affect his "entitlement to seek a receivership." The Trustee asserts that a "threshold problem with the *lis pendens* argument is that the appellants did not make it at any previous stage of this case, whether before the failed 2014 appeal or in the interim after that appeal and before this one."

{¶ 24} The Trustee asserts that "appellants try to avoid that problem by, once again, portraying it as jurisdictional. *Lis pendens*, they say, strips the Trustee of *standing* to seek a receivership." The Trustee asserts that such an "argument is easy to refute," since neither "the fraudulent transfer statutes nor the receivership statute requires someone in the Trustee's position to have a judgment lien." According to the Trustee, R.C. 1336.07 "confers standing to set aside fraudulent transfers upon a 'creditor,' " which R.C. 1336.01(D) defines as a "person who has a claim." The Trustee notes that a claim is defined "without any reference to any need for a lien or even a judgment," pursuant to R.C. 1336.01(C), as follows: " 'Claim' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

{¶ 25} The Trustee further asserts that "as to standing to seek a receivership, that

statute, too, would allow the Trustee's application to be heard regardless of whether he has a lien or a judgment." Pursuant to R.C. 2735.01(A), which governs the appointment of receivers, the Trustee asserts that he is a " 'creditor' " who seeks " 'to subject property or a fund to his claim,' " and that he is a " 'party whose right to or interest in the property or fund, or the proceeds thereof, is probable.' " According to the Trustee, pursuant to R.C. 2735.01(C) and (D), "he has judgments for money and for the vacation of fraudulent transfers." Pursuant to R.C. 2735.01(E), the Trustee asserts that "Paru Selvam is long since dissolved and insolvent." According to the Trustee, "one need only read the statutes to see that the Trustee has standing to unwind the fraudulent transfers and to seek a receivership. The defendants, accordingly, had to raise their *lis pendens* argument below in order to preserve it for review."

{¶ 26} The Trustee further asserts as follows:

But even if it were to consider the *lis pendens* argument despite the appellants' failure to raise it before, this court would only find that argument misplaced. That is because *lis pendens*, if applicable, operates not to bar the Trustee's lien but, rather, to subject that lien to the prior rights of the plaintiff in the case that triggered *lis pendens*.

According to the Trustee, "if *lis pendens* were indeed applicable here by virtue of the county treasurer's prior tax-foreclosure case, it would not bar the Trustee's judgment lien but, instead, would make the lien subordinate to the county treasurer's prior lien for unpaid real estate taxes, a priority that the Trustee already admits whether *lis pendens* applies or not." Finally, the Trustee asserts that "if, as the appellants seem to suggest in the alternative, the Trustee's own prior fraudulent-transfer complaint triggers *lis*

*pendens* as to his later-filed judgment lien, that would mean that the lien is subject to the Trustee's own prior rights as a federal judgment creditor. In neither event would *lis pendens* have any substantial effect on anyone's legal rights."

**{¶ 27}** In Reply, the Appellants assert in part as follows:

* * * [I]f Appellee's lawsuit is subject to the outcome of the Montgomery County Treasurer's foreclosure, then Appellee lacks present standing to proceed with his litigation. Since standing is required to invoke the jurisdiction of the common pleas court, the receivership has been established without jurisdiction. The mere appointment of a receiver is not necessarily an affront to the Treasurer's foreclosure, so long as the receiver takes no actions that could affect the outcome of the Treasurer's Foreclosure.

The Supreme Court of Ohio has held that an appellate court is to use a de novo standard of review when reviewing whether the established facts confer a party standing. * * * Moreover, recent cases confirm that standing can be raised for the first time on appeal. * * *.

**{¶ 28}** As this Court has previously noted:

The authority to appoint a receiver is "an extraordinary, drastic and sometimes harsh power which equity possesses." *Crawford v. Hawes*, 2d Dist. Montgomery No. 23209, 2010-Ohio-952, ¶ 33, quoting *Hoiles v. Watkins*, 117 Ohio St. 165, 174 N.E. 557 (1927). Due to the extreme nature of the remedy, the movant must demonstrate the need for a receiver by clear and convincing evidence. *Id.*, citing *Malloy v. Malloy Color Lab,*

*Inc.*, 63 Ohio App.3d 434, 437, 579 N.E.2d 248 (10th Dist. 1989).

> The decision to appoint a receiver is within the trial court's sound discretion. *Id.*; *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 73, 573 N.E.2d 62 (1991). In exercising that discretion, the trial court generally should consider "all the circumstances and facts of the case, the presence of conditions and grounds justifying relief, the ends of justice, the rights of all the parties interested in the controversy and subject matter, and the adequacy and effectiveness of other remedies." *Gibbs* at 73, fn. 3, quoting 65 American Jurisprudence 2d (1972) 873, 874, Receivers, Sections 19, 20; *Hawes* at ¶ 33. Absent an abuse of discretion, an appellate court will not reverse a decision on whether to appoint a receiver. *Id.*

*Walsh v. Smith*, 2d Dist. Montgomery No.25879, 2014-Ohio-1451, ¶ 6-7.

{¶ 29} R.C. 2735.01, which governs the appointment of a receiver, provides as follows:

> A receiver may be appointed by * * * the court of common pleas or a judge thereof in his county * * * in the following cases:

> (A) In an action * * * by a creditor to subject property or a fund to his claim, * * * on the application of the plaintiff, or of a party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and when it is shown that the property or fund is in danger of being lost, removed, or materially injured;

> * * *

(C) After judgment, to carry the judgment into effect;

(D) After judgment, to dispose of the property according to the judgment, or to preserve it during the pendency of an appeal, or when an execution has been returned unsatisfied and the judgment debtor refuses to apply the property in satisfaction of the judgment;

(E) When a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights;

(F) In all other cases in which receivers have been appointed by the usages of equity.

{¶ 30} R.C. 2703.26 governs lis pendens and provides: "When a complaint is filed, the action is pending so as to charge a third person with notice of its pendency. While pending, no interest can be acquired by third persons in the subject of the action, against the plaintiff's title." As this Court has previously noted:

* * * [U]nder R.C. 2703.26, a creditor's interest is protected so that "if a third party acquires an interest in the property while the action is pending, the third party takes the property subject to the final outcome of the action, and is as conclusively bound by the result of litigation as if the third party had been a party to the litigation from the outset." *Natl. Union Fire Ins. Co. v. Hall*, Montgomery App. No. 19331, 2003-Ohio-462, ¶ 14, citing *Cook v. Mozer* (1923), 108 Ohio St. 30, 140 N.E. 590.

"This is so irrespective of whether he has been made a party to the proceeding, or had actual notice of the pendency of the proceeding, and

even where there was no possibility of his having had notice of the pendency of the litigation. It is immaterial that a purchaser was a bona fide purchaser and for a valuable consideration. While there is no doubt whether lis pendens has the effect of constructive notice, it is almost universally held that strictly speaking the doctrine of lis pendens is not founded upon notice but upon reasons of public policy founded upon necessity." *Cook*, 108 Ohio St. at 36-37, 140 N.E. 590.

In order for lis pendens to apply, four elements must be present: "(1) [t]he property must be of a character to be subject to the rule; (2) the court must have jurisdiction both of the person and the res; * * * (3) the property or res involved must be sufficiently described in the pleadings," *Cook*, 108 Ohio St. at 37, 140 N.E. 590; and (4) "the litigation must be about some specific thing that must be necessarily affected by the termination of the suit." *Hall*, supra, 2003-Ohio-462, at ¶ 14.

*ABN AMRO Mtge. Group, Inc. v. Jackson*, 159 Ohio App.3d 551, 2005-Ohio-297, 824 N.E.2d 600, ¶17-19 (2d Dist.).

**{¶ 31}** As noted by the Twelfth District:

Lis pendens is not a substantive right. [*Cincinnati ex rel. Ritter v. Cincinnati Reds, L.L.C.*,] 150 Ohio App.3d 728, 2002-Ohio-7078, 782 N.E.2d 1225, at ¶ 31. It does not create a lien, but charges the purchaser with notice of the pending action. *Id.* The purpose of lis pendens is to protect the plaintiff's interest in the subject property. *Id.* Lis pendens does not relate to the power of a court to hear and decide a case on the

merits. *ABN AMRO Mtge Group, Inc. v. Roush*, 10th Dist. No. 04AP-457, 2005-Ohio-1763, 2005 WL 858181, ¶ 49.

*Irwin Mtge. Corp. V. DuPee*, 197 Ohio App.3d 117, 2012-Ohio-1594, 966 N.E.2d 315, ¶ 10 (12th Dist.).

{¶ 32} We agree with the Trustee that Appellants waived their lis pendens argument (which is not jurisdictional in nature), and further, we agree with the Trustee that the fraudulent transfer action was properly commenced, determined, and affirmed on appeal pursuant to R.C. 1336.07, which provides: "(A) In an action for relief arising out of a transfer or an obligation that is fraudulent under section 1336.04 or 1336.05, a creditor * * * may obtain one of the following: (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the claim of the creditor * * *." We finally note that the Trustee acknowledges in his brief that the Trustee's judgment lien is "subordinate to the county treasurer's prior lien for unpaid real estate taxes, a priority that the Trustee readily admits."

{¶ 33} We have reviewed the transcript of the hearing on the motion to appoint a receiver, and we conclude that the Magistrate's Decision accurately memorialized the proceeding, and that the Trustee presented clear and convincing evidence in support of the appointment of Jonathan Hung, namely that the Trustee possessed a judgment lien of substantial amount, and that the Key Bank Building lacked utilities and insurance, and was not being taken care of, such that Hung's appointment was necessary to preserve the property, ready it for sale, and subject it to the Trustee's claim pursuant to R.C. 2735.01 (subject to the approval of the trial court).

{¶ 34} There being no abuse of discretion, Appellants' second assignment of

error is overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, P.J. and HALL, J., concur.

Copies mailed to:

Ronald J. Kozar
Stephen P. Linnen
Hon. Dennis J. Langer